804 P.2d 738

**In re Edward D. LOCKWOOD, Justice of the Peace, West Mesa Precinct, Maricopa County, State of Arizona, Respondent.**

No. JQ–89–0001.

Supreme Court of Arizona.

Dec. 13, 1990.

Reconsideration Denied Feb. 5, 1991.

Landau & Hamilton, P.C. by Linda T. Hamilton, Chandler, for respondent.

Commission on Judicial Conduct by Jack D. Klausner, Phoenix.

## OPINION

CORCORAN, Justice.

The Commission on Judicial Conduct (Commission) recommends that Edward D. Lockwood (respondent), Justice of the Peace, West Mesa Precinct, be publicly censured for violations of certain Canons of the Code of Judicial Conduct. *See* rule 81, Rules of the Arizona Supreme Court. We have jurisdiction pursuant to Ariz. Const. art. 6.1, § 4.

### The Charges

The Commission instituted formal proceedings against respondent on April 26, 1988, alleging 6 counts of misconduct. Although respondent is a justice of the peace, he is not a lawyer.

Count 1 alleged that respondent violated Ariz. Const. art. 6, § 26 (oath of office) and Canons 1, 2, 3(A)(1), 3(B)(1), and 3(B)(2) of the Code of Judicial Conduct, rule 81, Rules of the Arizona Supreme Court, by instructing or improperly permitting court clerks to follow incorrect procedures in misdemeanor cases involving driving while under the influence (DUI). These procedures were discovered when Ann Hutchison, a Deputy Public Defender, moved to dismiss the complaint and information in a pending felony DUI case. Ms. Hutchison argued that the DUI defendant had no allegeable prior misdemeanor DUI convictions. One of the DUI defendant's prior convictions alleged by the state was a case assigned to respondent's court. Ms. Hutchison made an offer of proof that Cathy Zink Larkin, a clerk in the West Mesa Justice Court, would testify she signed respondent's name to two forms in the case at respondent's direction—the guilty plea proceeding form and the judgment of guilt and sentence. Ms. Larkin would further testify that it was common practice for her, as respondent's clerk, to accept the guilty plea and that many people pleading guilty to DUI, including this particular defendant, did not see a judge at any stage of the proceeding.

Count 1 was further substantiated by Judge Michael Jones, then a judge *pro tempore* at the West Mesa Justice Court, who declined to issue arrest warrants in several DUI cases involving guilty pleas entered in respondent's court. Typically, warrants would be issued because defendants failed to comply with the terms of their sentences. However, in these cases, the documents relating to the plea had been signed in respondent's name by a

court clerk, rather than by respondent. The two documents involved were again the guilty plea proceeding form and the judgment of guilt and sentence. Because of this defect, Judge Jones reasoned that the underlying judgments of guilt were invalid, and refused to issue the warrants.

Count 2 alleged that respondent attempted to mislead the Commission and interfered with its investigation of this matter, in violation of Ariz. Const. art. 6.1 and Canons 1, 2, 3(B)(1), and 3(B)(2). This charge arose from a letter from respondent to the Commission, in response to its inquiry, stating that he had taken steps to correct the improper procedures alleged in Count 1 and that the situation had been remedied. The complaint stated that respondent knew or should have known that the contents of that letter were untrue. Additionally, it charged that respondent misused his judicial authority by either requesting or permitting a court employee to give the Commission information that he knew or should have known was false.

On June 15, 1987, Judge Jones discovered 450 traffic citations in a waste basket at the West Mesa Justice Court, and brought the matter to the attention of the Maricopa County Attorney's Office and the Commission. The Commission alleged in Count 3 that 158 of these citations were required to be reported to the Motor Vehicle Department (MVD) for notation on the driving records of violators. An investigation revealed that only 5 of these citations actually were reported to MVD. The complaint alleged that respondent knew or should have known of the improper processing of traffic citations, and that his actions violated A.R.S. § 28–1061, Ariz. Const. art. 6.1, and Canons 1, 2, 3(A)(1), 3(A)(5), 3(B)(1), and 3(B)(2).

The allegations of Count 4 arose from procedures followed by the West Mesa Justice Court in its dealings with the Arizona Safety Bureau (ASB), a traffic safety school owned by Frederick Hartmann, a political acquaintance of respondent. *See* A.R.S. § 28–446. The Commission maintained that procurement of traffic safety school services by justice courts is subject to the Maricopa County Procurement Code, which requires open bidding and written contracts with all service providers. Neither of these requirements was observed by the West Mesa Justice Court in its dealings with ASB. The complaint alleged that the procedures followed by respondent violated A.R.S. § 28–692.01, Ariz. Const. art. 6.1, and Canons 1, 2, 3(A)(1) and 3(B)(1).

Count 5 related to the collection and accounting procedures the West Mesa Justice Court employed in receiving fees on behalf of ASB. The court collected these fees and remitted them to ASB from April through September 1985. The practice ceased when auditors examining court records suggested that the collection of such fees was not in the court's best interests and should be discontinued. Thereafter, persons attending traffic safety school paid the charge directly to the school. However, during the period that respondent's court collected the fines, it failed to account for these funds using the procedures set forth in the Uniform Accounting Manual for Arizona Justice Courts. The complaint alleged that the rules contained in the Manual applied to the traffic safety school funds, and that respondent knew or should have known of this requirement. His failure to follow the accounting procedures as to these monies is an alleged violation of A.R.S. §§ 11–414, 22–116, Ariz. Const. art. 6.1, and Canons 1, 2, 3(A)(1), and 3(B)(1).

On December 4, 1987, respondent telephoned Detective Joseph Otero, a Mesa police officer who was conducting a criminal investigation of respondent's son. Det. Otero returned respondent's call and tape recorded their conversation. At that time, respondent challenged Det. Otero's method of investigating the charge against his son and the amount of bail he requested. Count 6 alleged that respondent's conduct constituted improper interference with an ongoing investigation in violation of Ariz. Const. art. 6.1 and Canons 1 and 2.

*Proceedings Before the Commission*

The Commission conducted a hearing in this matter on July 28–29, 1988. It found that respondent was responsible for over-

seeing the administration of his court, and that Cathy Zink Larkin signed a guilty plea proceeding form using respondent's name and her own initials in a matter involving a DUI charge against a defendant.

The Commission found that respondent attempted to mislead the Commission and interfere with its investigation of this matter in his testimony at the hearing. There, the Commission pointed out, he claimed that the problem of clerks signing plea agreements was confined to Ms. Larkin and ceased upon termination of her employment. The Commission found that respondent knew or should have known that his testimony was untrue. It found that clerks routinely signed respondent's name to guilty plea proceeding forms, that respondent failed to institute corrective procedures, and that the problem neither was confined to Ms. Larkin nor ceased upon termination of her employment. The Commission also found that respondent misused his judicial authority by allowing Lori Leath to write a similar letter, although he knew or should have known that its contents were incorrect. The Commission found that respondent's conduct, as alleged in Counts 1 and 2, violated Canons 1, 2(A), 3(B)(1), and 3(B)(2).

The Commission further found that the charges contained in Count 6, relating to respondent's telephone conversation with Det. Otero, were proved by clear and convincing evidence. It found that respondent attempted to influence an ongoing investigation, in violation of Canons 1, 2(A), and 2(B).

The Commission found that Counts 3, 4, and 5 were not proved by clear and convincing evidence. It recommended that this court publicly censure respondent and assess costs and expenses of this proceeding in the amount of $6,702.54.

One member of the Commission dissented in part, arguing that the findings of misconduct based on Counts 1 and 2 relied on a theory varying from that charged in the complaint. The dissent interpreted the scope of the complaint, stating that it charged as follows: (1) it was the *practice* in respondent's court for clerks to take guilty pleas, rather than merely signing respondent's name to the supporting documents; (2) this practice was *authorized* by respondent; and (3) respondent and Ms. Leath lied when they reported that only Ms. Larkin had taken guilty pleas. Additionally, the dissent would have found that the allegations of Count 2 were not established by clear and convincing evidence because the letter from the Commission to which respondent and Ms. Leath replied is not part of the record in this proceeding.

Another Commissioner also filed a dissenting report concluding that the allegations of Count 3, relating to the improper disposal of traffic citations, were proved by clear and convincing evidence, and that A.R.S. § 28–1061 mandated removal from office.

### Discussion

In proceedings relating to judicial discipline, this court independently reviews the record and is the final trier of fact and law. *In re Marquardt*, 161 Ariz. 206, 778 P.2d 241 (1989); *In re Haddad*, 128 Ariz. 490, 491, 627 P.2d 221, 222 (1981). We have undertaken such a review, and find the following facts were proved by clear and convincing evidence.

### Count 1

In 1985 and 1986, DUI clerks in West Mesa Justice Court followed improper procedures in processing guilty pleas in misdemeanor DUI cases. The evidence presented at the Commission hearing showed that during 1985, Ms. Larkin accepted guilty pleas from DUI defendants who waived counsel. These defendants apparently did not see a judge at any stage of the proceeding. The evidence shows that after Ms. Larkin's departure in September 1985, other clerks handling DUI cases regularly signed respondent's name to guilty plea proceeding forms; during the latter period, however, all defendants appeared before respondent for sentencing.

The guilty plea proceeding form contains a checklist of constitutional rights that defendants must be aware of for their pleas to be knowing, voluntary, and intelligent.

*See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Linsner,* 105 Ariz. 488, 467 P.2d 238 (1970). The form exists to ensure that defendants are notified of the consequences of their guilty pleas, including waiver of the rights to trial by jury, assistance of counsel at all stages of the proceeding, confrontation, and the rights to remain silent and to be presumed innocent until proven guilty. Defendants pleading guilty have the right to be informed personally by the judge in open court of the nature of the charge and the nature and range of possible sentence. Additionally, they must be told of their right to plead not guilty. *See* rule 17.2, Arizona Rules of Criminal Procedure. The rules of criminal procedure must be followed by all courts, except in the case of pleas to minor traffic offenses. Rule 17.-1(a).

The improper procedures employed by the West Mesa Justice Court violated rule 17,[1] and respondent should have known these errors were being made by his employees. The evidence failed to show that respondent actually knew of the practice, but the record indicates by clear and convincing evidence that respondent abdicated his ethical responsibility to function as a justice of the peace. Therefore, we find that respondent's actions constituted a course of conduct prejudicial to the administration of justice, bringing the judicial office into disrepute, rather than the more severe infraction of willful misconduct. *See* Ariz. Const. art. 6.1. Furthermore, respondent violated Canon 3, which provides: "A judge should perform the duties of his office impartially and diligently." Specifically, respondent failed in his duty to "require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him." Canon 3(B)(2).

### Count 2

We find that respondent should have known that the problems in court proce-

---

**1.** We render no opinion on the validity of the convictions obtained utilizing the improper pro-

dure were not confined to Ms. Larkin and did not cease upon termination of her employment. Similarly, he allowed Ms. Leath to give the Commission information that he should have known was false. The evidence fails to show that he actually knew that the contents of the letters to the Commission were false. As in Count 1, the record indicates by clear and convincing evidence that respondent's actions, although not willful misconduct, constituted a course of conduct prejudicial to the administration of justice, bringing the judicial office into disrepute. *See* Ariz. Const. art. 6.1. Furthermore, respondent's conduct violated Canon 3(B)(2) because he failed to properly oversee staff under his direction and control.

We note that these findings were made in support of the allegations in the complaint, contrary to the dissent's contention. The allegations of Count 2 involving knowing and willful conduct were not proven. However, the complaint specifically charges that respondent "should have known" of the false statement, and his omission constitutes "conduct prejudicial to the administration of justice."

### Count 3

The record includes 158 traffic citations issued by various law enforcement agencies. These citations were removed from the trash can in the West Mesa Justice Court clerk's office on June 15, 1987, by investigators for the Maricopa County Attorney. Although a total of 450 citations were recovered, 292 of them did not reflect dispositions of guilty and therefore did not have to be forwarded to MVD. Testimony before the Commission established that moving violations other than petty offenses should be reported to MVD for recording on the offender's driving record. Stella Strnad, a supervisor at MVD, reviewed the citations and testified that only 5 had been entered in the MVD computer, indicating that the others had not been forwarded to the agency.

cedures.

We reviewed the citations and conclude that the majority of them are non-moving violations, not required to be reported to MVD. Of the remaining citations, those erroneously disposed of are few in number, and certainly insufficient to prove by clear and convincing evidence that respondent's court clerks discarded them as a matter of procedure, rather than inadvertently. The complaint alleged that respondent knew or should have known of the improper processing of traffic citations by his clerks. Because we find the error probably was an isolated instance of neglect, we find no evidence respondent knew or should have known of this occurrence.

The dissent from the Commission's findings in Count 3 reasoned that certain statutory provisions mandated that respondent be removed from office. A.R.S. § 28–1059 provides, in pertinent part:

B. Upon the deposit of the original or a copy of the traffic complaint with a court having jurisdiction over the alleged offense or with its traffic-violations bureau as aforesaid, the original or copy of the traffic complaint may be disposed of only by trial in the court or other official action by a judge of the court or a hearing officer, including forfeiture of the bail or by the deposit of sufficient bail with or payment of a fine or civil sanction to the traffic-violations bureau by the person to whom the traffic complaint has been issued.

C. It is unlawful and official misconduct for any traffic-enforcement officer or other officer or public employee to dispose of a traffic complaint or copies thereof or of the record of the issuance of the same in a manner other than as required by this article.

The evidence adduced at the Commission hearing establishes that respondent's court retained records of all traffic citations. The exhibits introduced in this proceeding represent copies that respondent's clerks deemed unreportable to MVD. No evidence was introduced that respondent disposed of traffic complaints without trial or other official action; therefore, no violation of A.R.S. § 28–1059 was established. The

dissent also relied on A.R.S. § 28–1061(E) as mandating that respondent be removed from office. That statute does not mandate removal from office, but merely provides that violations of its provisions constitute grounds for such action. We conclude that the record does not present clear and convincing evidence of the violations alleged in Count 3.

*Count 4*

Testimony at the Commission hearing revealed that respondent's court utilized the services of ASB because it had encountered difficulty monitoring attendance at other traffic safety schools in the past. No written contract existed between the West Mesa Justice Court and ASB. The complaint alleged that the absence of such a contract violated the provisions of the Maricopa County Procurement Code (Code). The Code applies "to every expenditure of public monies ... through a County Governmental Unit." Code § MC1–102(B). We find respondent's belief that the Code did not apply to these transactions was reasonable. Without deciding the issue, we note that some question exists whether this transaction involved an "expenditure of public monies" because the *defendant* was making the payment to ASB. Respondent testified that he believed that his court had no power to enter into contracts, and therefore, reasoned that the Code was inapplicable. The evidence presented to the Commission on this count failed to show by clear and convincing evidence willful misconduct or conduct prejudicial to the administration of justice so as to bring the judicial office into disrepute.

*Count 5*

Count 5 of the complaint, which also arose from respondent's dealings with ASB, charged that respondent failed to properly account for funds received from defendants in payment for attending the traffic safety school. The complaint notes that "all fines, fees and bonds collected by a Justice Court are to be accounted for pursuant to procedures set forth in the 'Uniform Accounting Manual' for Arizona Justice of the Peace Court." Respondent

contends that the funds did not constitute fines, fees, or bonds collected by a Justice Court, because the payments properly belonged to ASB. Respondent's court collected these funds for only 3 months, and required payment directly to ASB immediately after auditors questioned the procedure. No evidence was presented indicating that any funds were mishandled. Respondent testified that his court initially began to collect the payments because of the aforementioned difficulties in monitoring attendance.

Although the procedures employed by the West Mesa Justice Court for collection of traffic safety school fees may have invited allegations of misconduct, we find insufficient evidence showing that respondent's conduct was unethical. Respondent's willingness to change the procedure upon the recommendation of auditors tends to show that respondent acted in good faith in interpreting requirements that he reasonably believed were unclear. We agree with the Commission that Count 5 is not supported by clear and convincing evidence.

*Count 6*

We reviewed the transcript of respondent's telephone conversation with Det. Otero of the Mesa Police Department. Although respondent claims he called merely as a concerned father, his position as a Justice of the Peace was apparent to the officer. We have acknowledged that "judges must be and are held to higher standards than laymen.... They symbolize the law and justice and, consequently, their action and behavior will reflect favorably or unfavorably on the integrity of the judiciary and the high respect required in the administration of justice." *In re Biggins,* 153 Ariz. 439, 443, 737 P.2d 1077, 1081 (1987), quoting *In re Walker,* 153 Ariz. 307, 312, 736 P.2d 790, 795 (1987). We find that respondent's contact with Det. Otero regarding the pending investigation of respondent's son was improper conduct prejudicial to the administration of justice so as to bring the judicial office into disrepute in violation of Ariz. Const. art. 6.1. That provision applies to "conduct taken in good faith but which would appear to an objective observer to be unjudicial and which would erode public esteem for the judicial office." *Walker,* 153 Ariz. at 311, 736 P.2d at 794.

We recognize from the transcripts of respondent's telephone conversation with Det. Otero and from Det. Otero's testimony that respondent was an upset and overzealous father who is a judge, rather than a judge who is attempting to corrupt a criminal investigation. The uncensurable conduct of a concerned father can be the subject of judicial disciplinary proceedings when the concerned father is also a judge.

Additionally, respondent's actions violated Canons 1 and 2. Canon 1 sets forth a judge's duty to uphold the integrity and independence of the judiciary. Canon 2 provides that a judge should avoid impropriety and the appearance of impropriety in all his activities. Respondent's contact with Det. Otero violated both canons because it suggested an attempt to use his position improperly. This conduct reflects poorly on the integrity of the judiciary and creates at least an appearance of impropriety. We agree with the Commission that the record clearly and convincingly supports the allegations set forth in Count 6.

*Appropriate Sanction*

We follow the recommendation by the Commission on Judicial Conduct that respondent be publicly censured. We do not consider suspension or removal under Ariz. Const. art. 6.1, § 4 because respondent was not renominated for office in the primary election. In censuring respondent, we do not intend to minimize the seriousness of his misconduct. One of a judge's most critical responsibilities is to oversee his court's operation, in order that the protections of our Constitution and statutes are afforded to all litigants. We recognize that an overburdened court, such as respondent's, must take steps to improve the efficiency of its operations; however, the steps may not compromise a defendants' rights or neglect the judge's administrative responsibilities. Additionally, we emphasize

that members of the judiciary are required to exercise restraint in their dealings with other public officers and officials to avoid the appearance of impropriety, which resulted from respondent's actions in connection with the investigation of his son.

Respondent is formally and publicly censured for the reasons contained in this opinion. Ariz. Const. art. 6.1, § 4. Respondent is assessed costs and attorneys' fees in the amount of $6,702.54.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

CAMERON, J., did not participate in the determination of this matter.