812 P.2d 992

**In the Matter of A. Steven LEHMAN, Justice of the Peace, Duncan Precinct, Greenlee County, State of Arizona.**

**No. JC–90–0001.**
**Commission on Judicial Conduct Nos. 89–CJC–041, 89–CJC–104.**

Supreme Court of Arizona,
En Banc.

June 25, 1991.

Meyer, Vucichevich & Burns, P.C. by Rad L. Vucichevich, Phoenix, for respondent.

Fennemore Craig by Kenneth J. Sherk, Christopher M. Skelly, Phoenix, for Commission.

FELDMAN, Vice Chief Justice.

The Commission on Judicial Conduct (Commission) recommended that this court administer a public censure to A. Steven Lehman (respondent), a justice of the peace. Established by article 6.1 of the Arizona Constitution, the Commission is charged with investigating and hearing complaints against judges and recommending to this court the disposition of judicial disciplinary cases.[1] *See In re Marquardt*, 161 Ariz. 206, 207, 778 P.2d 241, 242 (1989); *In re Haddad*, 128 Ariz. 490, 491–92, 627 P.2d 221, 222–23 (1981). We have jurisdiction under article 6.1, §§ 2, 3, and 4 of the Arizona Constitution, and Rule 11, Rules of

---

**1.** The Commission is composed of judges of the court of appeals, the superior court, a justice of the peace, a municipal court judge, two members of the State Bar of Arizona, and three citizens. Ariz. Const. art. 6.1, § 1.

Procedure for the Commission on Judicial Conduct, 17B A.R.S.

## FACTS

On February 9, 1990, a Statement of Charges was filed with the Commission and formal proceedings were instituted against respondent, a non-lawyer justice of the peace serving in the Duncan precinct of Greenlee County. Respondent filed an answer, and a hearing was scheduled. Before that hearing, respondent and the Commission entered into a Consent to Public Censure (Consent) in which respondent acknowledged that "he has conducted himself in a manner which violates the Code of Judicial Conduct."[2] Respondent further acknowledged that his conduct had violated article 6.1, § 4 of our constitution and that "such violations warrant public censure, and that Respondent should be publicly censured."

On the basis of respondent's admissions, the Commission made findings of fact and conclusions of law and recommended that this court publicly censure respondent. The recommendation is before us on an extremely limited record, as the Commission did not hold a hearing and did not take evidence. Respondent was in the last year of his four-year term as an elected justice of the peace when the charges against him were filed with the Commission. He was defeated in the primary election and his term of office has expired.

Of the six counts formally charged against respondent, two were dismissed by the Commission and four were admitted by the Consent. Thus, respondent admitted the following:

On March 25, 1989, Thomas Lee Ford was arrested and brought before Respondent for an initial appearance, at which time Respondent released Mr. Ford on his own recognizance. At or about the same time, Respondent gave Mr. Ford some money, the telephone number to his clothing store, and the offer of a ride in his car.

On March 26, 1989, Mr. Ford was arrested again and brought before Respondent for an initial appearance. In the course of conducting his proceedings, Respondent told Greenlee County Sheriff's Officer Steve Cervantes that he didn't give "a fucking, flying, shit" what had prompted the second arrest and that he "didn't give a fuck" that Officer Cervantes did not like the language he was using.

Respondent owned a race horse which won a race at the March 26, 1989 Greenlee County Fair Race Meet. A blanket was to be presented to the owner of the winning horse. Respondent did not receive his blanket in the winners' circle and became upset. He ordered Reserve Officer Michael Richins to get the blanket and bring it to him. When Officer Richins refused, Respondent ordered Officer Barbara Gutierrez to "arrest this man for interfering with judicial proceedings."

On April 2, 1989 at the Graham County Fair Race Meet, Respondent approached Assistant Magistrate Carolyn Stacey of Safford to ask her if he could take her place as duty judge while the horse races were being held in Graham County. When Judge Stacey said she was not sure if that would be proper and asked Respondent why he wanted to take her place, Respondent responded by looking to the race stewards' offices and saying that he wanted to "get those sons of bitches." When Judge Stacey told Respondent that she could not be absent without a specific reason, Respondent told her she could tell the authorities she was having her menstrual period.

In the course of conducting a judicial proceeding in a case involving a person charged with sex-related crimes, Respondent remarked to prosecutors and law enforcement officers that he did not think much of such charges because

---

2. *See* Rule 81, Ariz.R.Sup.Ct., 17A A.R.S., adopting the Code of Judicial Conduct of the American Bar Association—as amended by this court—and providing that the Code "shall govern the conduct of the judiciary of this state in the administration of their offices."

"Everyone knows that the girls in Duncan are easy."

Consent, filed June 1, 1990, at 2–3.

## DISCUSSION

After due consideration of the Commission's recommendations, this court is empowered to discipline judges for conduct that "constitutes wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Ariz. Const. art. 6.1, § 4; *see also* Rules 4 and 11, Rules of Procedure for the Commission on Judicial Conduct, 17B A.R.S. The provisions of article 6.1 apply to justices of the peace. Ariz. Const. art. 6.1, § 5.

Respondent conceded, as he must, that the conduct he admitted violates Canons 1, 2, and 3 of the Code of Judicial Conduct adopted by Rule 81, Ariz.R.Sup. Ct., and that it violates article 6.1, § 4 of the constitution. Specifically, we find violations of Canon 2 because the conduct described destroys public confidence in the integrity and impartiality of the judiciary (Canon 2(A)) and shows that respondent's personal relationships influenced his judicial conduct and judgment (Canon 2(B)). The conduct violated Canon 3 in that it manifested a lack of order and decorum (Canon 3(A)(2)), a lack of dignity and courtesy to those with whom respondent dealt in his official capacity (Canon 3(A)(3)), and involved *ex parte* proceedings (Canon 3(A)(4)).

This court is now asked to dispose of the case by administering a public censure to respondent. Our choices are limited by the constitution to public censure, suspension from office, or removal from office. *See* Ariz. Const. art. 6.1, § 4. Pragmatically, under the facts of this case, which reached this court's calendar after respondent's term had expired, we are limited to public censure. We cannot remove respondent or suspend him from an office he no longer holds. *In re Lockwood,* 167 Ariz. 9, 14, 804 P.2d 738, 743 (1990). However, we do not believe it proper to simply administer a public censure without some explanation.

Even though the facts given us are sketchy, we view respondent's conduct as quite serious. It constitutes more than misdeeds in respondent's private life. In *Marquardt,* dealing with a judge whose conduct on the bench was satisfactory, we suspended the judge from office without pay for misconduct because he violated a criminal law in his private life. 161 Ariz. at 217, 778 P.2d at 252. In the present case, we deal with something more serious—misconduct constituting abuse or corruption of the office itself. Absent the most significant mitigating circumstances, this court would not approve a mere public censure as the proper discipline for the abuse of office shown by the conduct respondent has admitted. Removal, or at least significant suspension without pay, would be the only appropriate discipline in a case such as this.

As noted, however, this respondent does not hold office and cannot be suspended or removed. Accordingly, we accept and approve the Commission's recommendation that respondent be publicly censured.

## CONCLUSION

The conduct described and respondent's breach of the canons constitute willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all within article 6.1, § 4 of the constitution.

Respondent is hereby formally and publicly censured. He is also ordered to pay costs and attorney's fees of $3,750.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.