867 P.2d 850

**In the Matter of William M. GUMAER, Justice of the Peace, Kingman, Mohave County, State of Arizona.**

No. JC–92–0001.
Commission on Judicial Conduct
No. 91–CJC–145.

Supreme Court of Arizona.

Jan. 27, 1994.

Wachtel, Biehn & Malm by Denis R. Malm, Lake Havasu City, for respondent.

Harriet L. Turney, Special Counsel, Phoenix, for Commission on Judicial Conduct.

## OPINION

ZLAKET, Justice.

On April 30, 1992, the Commission on Judicial Conduct instituted proceedings against Mohave County Justice of the Peace William M. Gumaer. Before the formal hearing, Judge Gumaer stipulated to the majority of

those facts supporting the charges against him. Specifically, he agreed that: (1) he acted as an intermediary between an acquaintance from Mexico and the owner of a Laughlin, Nevada casino with respect to the establishment of gambling operations south of the border, a project that apparently never came to fruition; (2) he was involved in discussions concerning a proposed, but never realized, enterprise to recover stolen property from Mexico for insurance proceeds; (3) he induced a pro tem justice of the peace to sign an injunction in a case from which he (Gumaer) recused himself because of a conflict of interest; (4) he involved himself in the police investigation of a domestic complaint brought against a court clerk by her husband; (5) he permitted *ex parte* contacts by criminal defense lawyers, including discussions about the terms of release for their clients in custody; (6) he allowed others to gain the impression that a certain local attorney, who had previously represented him in a divorce proceeding and from whose mother-in-law he had personally borrowed money, enjoyed a favored position with him and in his court; (7) he failed to report his wife's employment with a Laughlin casino on his financial disclosure statement; (8) he occasionally ignored established court procedures and dismissed or otherwise disposed of traffic tickets for acquaintances; (9) he allowed his staff to receive gifts from persons and organizations doing business with the court; (10) he requested that the police issue a traffic citation to a truck driver who passed him in a no passing zone, then presided over the matter in his court; (11) he failed to disclose to litigants and counsel that certain attorneys appearing in his court had represented him personally in the past; (12) he carried a concealed weapon without a license; (13) he attempted to obtain information from his staff about the Judicial Conduct Commission's investigation, then on deposition denied having done so; and (14) he signed, without authority, a letter purporting to appoint a certain acquaintance as a "Kingman justice court police officer."[1]

Judge Gumaer, a non-lawyer, conceded in the foregoing stipulation that his conduct created an appearance of impropriety as prohibited by Canon 2, Code of Judicial Conduct, Rule 81, Arizona Rules of the Supreme Court, and was prejudicial to the administration of justice in violation of article 6.1, § 4 of the Arizona Constitution. Further acknowledging that this court may impose any sanction it deems appropriate, Judge Gumaer and counsel for the Commission stipulated to a 90–day suspension without pay, the appointment of a judicial monitor, and the assessment of fees and costs incurred in this proceeding.

By a 5 to 4 vote, the Commission accepted the stipulation.[2] Unfortunately, the record does not indicate the four dissenters' views. Following Judge Gumaer's subsequent hearing testimony, the Commission issued its Findings of Fact, Conclusions of Law and Recommendations, calling upon us to (1) publicly censure the judge, (2) suspend him for 90 days without pay, and (3) order him to pay fees and costs. It also established specific conditions for monitoring his conduct.

■ We conduct a *de novo* review of the record in these matters, *In re Marquardt,* 161 Ariz. 206, 207, 778 P.2d 241, 242 (1989), but will "give serious consideration to the findings of the commission." *In re Hendrix,* 145 Ariz. 345, 348, 701 P.2d 841, 844 (1985). The burden of proof is by clear and convincing evidence. *In re Haddad,* 128 Ariz. 490, 492, 627 P.2d 221, 223 (1981). As previously noted, however, the basic facts are not in dispute.

■ We have reviewed all pertinent exhibits and the transcript of Judge Gumaer's testimony before the Commission. Although that testimony portrays his conduct more favorably than do the cold written words of

---

1. The letter indicated that the individual was on "special assignment" with the "drug enforcement administration (DEA)," and possessed a gun "for the purpose of carrying out official duties." It further stated that he was authorized to operate "any vehicle in his possession" as an emergency vehicle. By separate letter, Judge Gumaer later requested the California Department of Motor Vehicles to establish a confidential file on this person "because of the nature of his special assignment."

2. Two members of the Commission recused themselves.

the stipulation, it falls short of providing reasonable justification or excuse for many of his actions.

For example, in attempting to explain the failure to disclose his past representation by certain lawyers appearing in his court, the judge stated that because people in his rural jurisdiction are well acquainted with one another, he simply assumed any such relationships were common knowledge. The carrying of a concealed weapon, he said, was due to a lack of security in the courthouse. The judge also claimed that his *ex parte* communications with counsel, occasional deviations from normal case-processing methods, and involvement in the traffic case in which he would have been a witness were due respectively to "established practices" in his jurisdiction, severe overcrowding at the jail, and the need for expeditious handling of a busy caseload. While it is true that Judge Gumaer presides over a rural justice court having one of the heaviest caseloads in this state, such explanations do nothing to allay our concerns about his behavior.

The judge asserted that some improprieties were completely inadvertent, such as the failure to state his wife's employment on the financial disclosure, and his involvement "as a friend" in the investigation of his clerk's domestic problems. He apparently saw nothing wrong with telling the pro tem justice of the peace to sign an injunction in the case from which he later recused himself. He also initially did not think it was improper to issue the "justice court police officer" credentials, but testified that he has since realized he "shouldn't be doing those things."

Judge Gumaer agreed that he erred when he involved himself in traffic tickets issued to acquaintances, allowed his staff to accept gifts, and quizzed them about the Commission's investigation. And, though he apparently expected no remuneration for introducing the two business associates regarding the Mexican casino, the judge conceded that when one of them promised to "take care of" him if the deal "ever came together," he did not decline.

■ On cross-examination, Judge Gumaer admitted that he had seldom read or paid attention to the ethical rules in the past. Although we appreciate the judge's candor before the Commission, we are gravely concerned about his repeated failure to recognize the existence of ethical obligations and his apparent inability to perceive that a judicial officer's conduct while off the bench may reflect on the justice system as much or more than his or her actions in the courtroom. *In re Biggins*, 153 Ariz. 439, 444, 737 P.2d 1077, 1082 (1987) (justice of the peace must maintain exemplary personal life despite burden of doing so in a small community). Clearly, neither personal familiarities and informalities nor the exigencies of a busy court in a rural community warrant a departure from ethical standards. Accordingly, we find by clear and convincing evidence that Judge Gumaer violated Canon 2 of the Code of Judicial Conduct; Rule 81, Arizona Rules of the Supreme Court; [3] and article 6.1, § 4 of the Arizona Constitution. We do not agree, however, with the suggestion that his conduct in every instance merely gave the appearance of impropriety. In some cases, it was plainly improper.

We further conclude that Judge Gumaer's actions were prejudicial to the administration of justice and tended to bring his judicial office into disrepute. Significantly, however, those actions appear to have been the product of ignorance and carelessness, rather than of bad faith or calculated wrongdoing.

We recognize in mitigation that this judge has no prior disciplinary record. He has been on the bench since 1983, and has generally demonstrated the ability to fairly, effec

---

3. Canon 2, in effect when the Commission made its findings, stated:

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

tively, and efficiently run his court. Before becoming a judicial officer, Judge Gumaer served as a deputy in the Mohave County Sheriff's Office for approximately 14 years. The record contains letters of commendation and support for him from various public officials in Mohave County and surrounding areas.

Judge Gumaer professes to have learned much from this experience. He has pledged to thoroughly familiarize himself and comply with the Code of Judicial Conduct in the future. Because of these mitigating factors, we have elected to defer to the Commission's recommendations. We emphasize, however, that our decision is not without reservation, given Judge Gumaer's consistent and broad-based inattention to ethical obligations. He has, at the very least, demonstrated poor judgment. The outcome would surely have been more severe had he previously been censured or suspended.

Since 1988, this court has been authorized under appropriate circumstances to suspend judges without pay. *See* Ariz. Const., art. 6.1, § 4; *In re Anderson,* 168 Ariz. 432, 814 P.2d 773 (1991); *In re Lehman,* 168 Ariz. 174, 812 P.2d 992 (1991); *In re Lockwood,* 167 Ariz. 9, 804 P.2d 738 (1990); *In re Marquardt,* 161 Ariz. 206, 778 P.2d 241 (1989). This is a proper case for such action.

For the foregoing reasons, we suspend William M. Gumaer from the office of Justice of the Peace, without pay, for a period of 90 days. The Commission shall continue to monitor the judge's activities for one year following this suspension. We retroactively affirm the interim conditions imposed on him by the Commission,[4] and authorize it to establish any additional terms it deems appropriate. Finally, Judge Gumaer shall reimburse the Commission, in accordance with its previous ruling,[5] the sum of $2,100 in fees, plus costs associated with this proceeding.

MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.

FELDMAN, C.J., recused himself and did not participate in this matter.

---

4. On November 30, 1992, the Commission entered the following order:

> 1. Judge Leonard C. Langford, a superior court judge in Mohave County, will be asked to serve as respondent's mentor for a period of six months or until the Supreme Court makes a ruling, and to meet monthly with the respondent, beginning in December, 1992, to discuss the ethical responsibilities of a judge and the Code of Judicial Conduct. Respondent will be required to file written reports of these meetings.
> 2. Respondent will be required to attend the Supreme Court's new judges orientation program the next time it is offered and to provide third-party certification that he remained and participated in each class during the entire program.
> 3. Respondent will be instructed to attend all judicial education programs and continuing legal education seminars on the subject of ethics that are offered in Northern Arizona in 1993.
> 4. The Judicial Ethics Advisory Committee will be asked to send the respondent a complete set of all ethics opinions issued during 1992 which the respondent will be required to read and to certify to the commission that he understands.

5. This ruling ordered Judge Gumaer to pay costs and fees

> commencing in December 1992 at the rate of no less than $200 per month. The payments will be deposited by the commission in a separate, non-reverting account in the Administrative Office of the Courts until the Supreme Court makes a final decision in the case, after which the accumulated fees will either be returned to the respondent or retained by the commission as reimbursement of its expenditures in accordance with the Court's decision.