880 P.2d 620

**In re the Matter of Stanley Z. GOOD-FARB, Superior Court Judge, Phoenix, Maricopa County, State of Arizona, Respondent.**

No. JC-94-0002.

Comm. on Judicial Conduct Nos. 93-CJC-200, 93-CJC-210.

Supreme Court of Arizona, En Banc.

Aug. 30, 1994.

Bryan Cave by Mark I. Harrison, Phoenix for Stanley Z. Goodfarb.

Meyer, Hendricks, Victor, Osborn & Maledon by Bruce E. Meyerson, Phoenix, Sp. Counsel for the Comm. on Judicial Conduct.

Sparks & Siler by Joe P. Sparks, Scottsdale, for San Carlos Apache Tribe, Tonto Apache Tribe, Yavapai-Apache Tribe, and Camp Verde Reservation, amici curiae.

Cox and Cox by Alfred S. Cox, amicus curiae, Phoenix.

Hofmann, Salcito & Stevens by Leroy W. Hofmann and Daniel R. Salcito, Phoenix, amicus curiae.

## OPINION

MARTONE, Justice.

This is a judicial disciplinary proceeding in which the respondent, Stanley Z. Goodfarb, Judge of the Superior Court of Arizona in Maricopa County, asks us to modify the sanction recommended by the Commission on Judicial Conduct under Rule 11, Rules of Procedure for the Commission on Judicial Conduct.

## I. BACKGROUND

Judge Goodfarb was charged with two counts of judicial misconduct. Count I alleged that in the case of *State v. Joseph*, 1 CA–CR 92–1379–PR, the Arizona Court of Appeals filed a memorandum decision in which it found that Judge Goodfarb had used the words "fucking niggers" in connection with a hearing on a petition for post-conviction relief. Count II alleged that, notwithstanding a prior admonition and a prior reprimand from the Commission, Judge Goodfarb used profane expressions in the case of *Long v. Dayton–Hudson Corp.*, CV 93–24269.

After an evidentiary hearing, the Commission filed its findings of fact, conclusions of law, and recommendations (hereinafter Findings). Neither the facts nor the conclusions are in dispute. The parties differ over the recommended sanction.

Judge Goodfarb was the trial judge in *State v. Joseph*, CR 87–08901, in the Superior Court of Arizona in Maricopa County. Joseph, a black man, was found guilty by a jury of second degree murder in 1988. In 1989, Judge Goodfarb held a hearing on Joseph's petition for post-conviction relief. Joseph's counsel argued that his conviction should be vacated because the state used, or failed to use, peremptory strikes on the basis of race, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Before taking evidence, Judge Goodfarb met with counsel in chambers without a court reporter. As a prelude to the evidentiary hearing, counsel argued the *Batson* issue. At some point, Judge Goodfarb used the words "fucking niggers." Findings at 2. Counsel for Joseph asked to make a record,

but Judge Goodfarb tried to discourage him from doing so. He claimed that the words were spoken in jest and that he was being sarcastic about the *Batson* issue. Judge Goodfarb recused himself and the petition for post-conviction relief was assigned to another judge.

The Commission had earlier admonished Judge Goodfarb for using the words "little son of a bitch" in a hearing, and reprimanded him for using the words "goddamn bullshit" in another proceeding. Findings at 3. Nevertheless, in November of 1993, during a hearing in the case of *Long v. Dayton–Hudson, Corp.*, No. CV 93–24269, frustrated with counsels' choice of litigation over settlement, Judge Goodfarb said, "but in order to not waste the court's time, two intelligent lawyers can enter into an agreement which most reasonable people can enter into if they haven't gone to law school and got their brains fucked up. . . ." Findings at 3.

The Commission considered aggravating and mitigating circumstances. It concluded that Judge Goodfarb's continued use of non-racial profanity, notwithstanding prior discipline and notwithstanding the advice of his colleagues to correct his intemperate language, was an aggravating factor. The Commission also found Judge Goodfarb's failure to recognize the full extent of the harm caused to the public's perception of the judiciary to be aggravating.

As mitigating factors, the Commission found that Judge Goodfarb's use of racist and profane language was just that, and did not interfere with his ability to fairly decide cases. It found that Judge Goodfarb had a long history of public service, including 18 years as a judge of the superior court, and that he was dedicated, capable and hard-working; someone whose life was the work of a trial judge. It also found that Judge Goodfarb had begun counseling to deal with his intemperate use of language, that the racial slur used in *State v. Joseph* occurred more than four years before the hearing, and no comparable incident had since been reported to the Commission.

As to count I, the Commission concluded that Judge Goodfarb's use of racial epithets

in the course of conducting judicial business violated Canons 1, 2A and 3A of the Code of Judicial Conduct, Rule 81, Ariz.R.S.Ct., effective February 1, 1985, and constituted conduct prejudicial to the administration of justice that brought the judicial office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution.

As to count II, the Commission found that Judge Goodfarb's use of profanity during the course of official judicial business violated Canons 1, 2A, and 3B of the Code of Judicial Conduct, Rule 81, Ariz.R.S.Ct., effective September 1, 1993,[1] and constituted willful misconduct in office, habitual intemperance, and conduct prejudicial to the administration of justice that brought the judicial office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution.

The Commission voted eight to two to recommend that Judge Goodfarb be suspended without pay for a period of three months, that he undergo counseling to control his intemperate behavior, and that he be assessed fees and costs. One commissioner would have imposed a suspension of six months while another would have imposed censure and not suspension.

The Commission's findings were filed on April 19, 1994. Article 6.1, § 2 of the Arizona Constitution provides that a judge is disqualified from acting as a judge, without loss of salary, while a recommendation of suspension is pending before this court. On May 9, 1994, we therefore suspended Judge Goodfarb effective May 16, 1994, pending this court's final decision. See Rule 11(d), Rules of Procedure for the Commission on Judicial Conduct (suspension to be implemented by order of this court). On May 16, 1994, we postponed the effective date of interim suspension until May 27, 1994, in order to allow for the more orderly transfer of his cases.

The case was argued in this court on June 2, 1994. On June 8, 1994, counsel for Judge Goodfarb sent a letter to this court advising us that Judge Goodfarb would not seek retention in the 1994 general election.[2] Judge Goodfarb sent his own confirming letter on June 14, 1994. Because it is now clear that Judge Goodfarb will no longer be a judge after the conclusion of his current term, some of the issues raised in this court, including the question of removal, are now moot.[3]

## II. ARGUMENTS

Judge Goodfarb argues that he deserves a public censure, and not suspension, because (1) the financial impact of a suspension is unduly punitive, (2) a suspension is disproportionate to the range of sanctions imposed in similar cases, and (3) a suspension fails to give adequate weight to his distinguished record of service on the bench. The Commission argues that (1) the financial impact of a suspension is both irrelevant and improper in considering the public interest, (2) a three-month suspension is not disproportionate in light of the failure of the prior disciplinary proceedings to have affected Judge Goodfarb's conduct, and (3) Judge Goodfarb's record of service to the bench is given consideration in a recommendation of suspension rather than removal. The Commission concedes "that removal from the bench is too harsh a sanction." Response at 12.

## III. RESOLUTION

An independent judiciary is one of the three legs of our tripartite system of government. The continued existence of an independent judiciary depends upon the people's faith in the institutions they create. Thus

---

1. Actually, the Commission found that Canons 1, 2A and 3B of the Code of Judicial Conduct effective February 1, 1985, were violated, but it must have meant the Code of Judicial Conduct effective September 1, 1993, as charged, because the profanity in the *Long* case occurred on November 4, 1993.

2. Through counsel, Judge Goodfarb informed us that these proceedings had been traumatic for him, his family, the people affected by his misconduct and the judiciary. He concluded that the best interests of the judiciary and his own well-being would best be served by stepping aside.

3. And, therefore, as noted in Justice Moeller's separate concurrence, this case is not authority for the proposition that removal is inappropriate for this sort of conduct.

our constitution grants this court the power to discipline a judge for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Ariz. Const. art. 6.1, § 4. And it is for this reason that we impose sanctions, not to punish, but to protect the public. *In re Peck*, 177 Ariz. 283, 287, 867 P.2d 853, 857 (1994). This standard guides our judgment in the selection of an appropriate sanction. Our judgment should be driven by a careful evaluation of the facts and their likely impact on both our system of justice and the perception of the integrity of the judicial process.

We agree with the Commission that the financial impact of a suspension plays no role here. A consideration of the financial impact of a suspension would in no way serve the objective of guarding the public's interest.

We also agree with the Commission that suspension, and not censure, is appropriate. It is true that Judge Goodfarb has had a long and solid judicial career. The many testimonials before the Commission and this court on his behalf are evidence of that. It makes this case tragic, and even pathetic. But there was also substantial evidence before the Commission that many citizens have lost faith in Judge Goodfarb's judgment because he used racially inflammatory language in an official court proceeding and because of his chronic use of profanity in official proceedings.

This case does not involve conduct in a judge's private life. This misconduct occurred in the course of official judicial proceedings. A judge must be able to distinguish between the two, and a consistent inability to do so raises profound questions about the judge's judgment. In *In re Marquardt*, 161 Ariz. 206, 778 P.2d 241 (1989), this court suspended a judge of the superior court without pay for one year for a misdemeanor conviction that did not involve the performance of judicial duties. He had no prior disciplinary record. Just this year we said that "[w]e must treat official conduct even more strictly than improprieties in a judge's private life because it goes to the very integrity of our judicial system." *In re Peck*, 177 Ariz. at 288, 867 P.2d at 858. In contrast to *In re Marquardt*, this case does involve the performance of judicial duties, and this judge has a prior disciplinary record. Under these circumstances, suspension and not censure is the appropriate sanction.

The Commission recommended a suspension of three months, accompanied with behavioral counseling. Judge Goodfarb has now decided not to continue as a judge, and his present term expires in less than six months. Because Judge Goodfarb will no longer be serving as a judge, we think that counseling is moot as a condition of suspension, although it might be quite valuable to the respondent from a personal point of view.

We are of the view that this case presents a question more of judgment and behavior than of language. The use of such language during the course of judicial proceedings is so debilitating to the administration of justice that we think the public, and the public's perception of justice, will be better served by suspending Judge Goodfarb for the balance of his remaining term.

Accordingly, under the authority of art. 6.1, § 4 of the Arizona Constitution, the respondent is suspended without pay for the balance of his current term, effective upon the filing of this opinion. Respondent is also assessed costs and fees as may be taxed and allowed.

FELDMAN, C.J., and ZLAKET, J., concur.

MOELLER, Vice Chief Justice, specially concurring.

Persuasive, perhaps ultimately compelling, arguments can be made that the appropriate sanction for the type of conduct involved in this case is removal, particularly in view of the prior warnings and reprimands to the judge. However, Judge Goodfarb's decision to not seek retention in the November election renders moot consideration of any sanction above or beyond suspension for the balance of his existing term. Accordingly, I concur in the judgment of the court suspending him without pay for the rest of his term. Such concurrence should not be read as rejecting consideration of removal for similar misconduct in any future case in which the issue of removal is not moot.

CORCORAN, Justice, specially concurring:

I concur in the judgment of the majority and also join in Justice Moeller's special concurrence. I write separately, however, to express my concern over the fact that the misconduct underlying this matter occurred more than 4 years before any disciplinary action was initiated. The delay that occurred in this case, whatever the cause, is inexcusable. Because of the delay, Judge Goodfarb, whose conduct caused citizens to lose faith in his ability to judge, remained on the bench for years before the disciplinary system acted.

I believe that Arizona is entitled to the best judges it can get and keep, and that the public should and does demand and expect much from their judges in view of the vast power granted to them. The only way to assure that the public's interests are being served is by fulfilling our responsibility for self-regulation. We are charged with the responsibility for regulating ourselves and we, lawyers and judges, must act in a timely fashion. When we allow the kind of delay that occurred in this case, we fail in our obligation to the public.