933 P.2d 563

In re the Matter of Lawrence H.
FLEISCHMAN, a Judge of the Superior
Court, Pima County, State of Arizona,
Respondent.

No. JC–96–0003.

Supreme Court of Arizona,
En Banc.

March 13, 1997.

Bryan Cave LLP by Mark I. Harrison, Phoenix, Special Counsel, Commission on Judicial Conduct.

Slutes, Sakrison, Grant, Hill & Rubin, P.C. by Tom Slutes, Tucson, for Respondent.

## OPINION

JONES, Vice Chief Justice.

After an evidentiary hearing, the Commission on Judicial Conduct (Commission) recommended that this court suspend Lawrence H. Fleischman (respondent) from the performance of duties as judge of the Pima County Superior Court for a period of sixty days, without pay. The Commission further recommended that respondent be ordered to pay attorneys' fees and assessable costs incurred in connection with the hearing. Established by Article 6.1 of the Arizona Constitution, the Commission investigates and hears complaints against judges and recommends to this court the disposition of all cases involving judicial discipline. *In re Lehman,* 168 Ariz. 174, 174, 812 P.2d 992, 992 (1991); *see In re Haddad,* 128 Ariz. 490, 491–92, 627 P.2d 221, 222–23 (1981). We have jurisdiction pursuant to Article 6.1, Sections 2, 3, and 4 of the Arizona Constitution, and Rule 11, Rules of Procedure for the Commission on Judicial Conduct, 17B Arizona Revised Statutes.

## FACTS

In May 1994, Perry Rogers, one of respondent's former law clerks and the chief operating officer of Agassi Enterprises, Inc. (AEI), invited respondent to act as a consultant and negotiator to represent AEI in contract negotiations between Nike, Inc. and AEI. AEI is wholly owned by Andre Agassi, a top-ranked tennis professional. Respondent consulted informally with the presiding judge of the Pima County Superior Court concerning the propriety of the proposed activity. Although respondent was aware of the purpose and existence of the Judicial Ethics Advisory Committee—a committee established by the Supreme Court with responsibility to address questions on judicial conduct—he chose not to consult the committee. Respondent apparently concluded that

his consulting and negotiating on behalf of AEI would not violate the Code of Judicial Conduct applicable to all judges in Arizona. *See* Rule 81, Ariz. R. Sup.Ct. We do not know the precise details of respondent's conversation with the presiding judge because the conversation was neither recorded nor transcribed.

Between August and December 1994, respondent performed as a member of the AEI negotiating team, meeting with representatives from Nike on at least six occasions and dealing frequently with them to negotiate the terms and conditions of a contract to be executed between AEI and Nike. Respondent acted as one of two principal AEI spokespersons. He gave advice regarding strategy, terms, and conditions of the proposed Nike/AEI agreement and reviewed draft copies of the agreement. Representatives of both AEI and Nike were aware that respondent held judicial office in Arizona throughout the negotiations.

AEI and Nike concluded formal negotiations on December 27, 1994, and signed a letter of intent on January 6, 1995. On February 14, 1995, respondent signed his personal consulting agreement with AEI setting forth the terms and conditions of the work previously performed by him during the negotiations with Nike as well as work to be performed thereafter. Respondent did not participate in any meetings between Nike and AEI after January 6, 1995, but continued to receive and review documents related to the Nike/AEI contract and to communicate with AEI representatives through the summer of 1995. He visited Nike's Portland, Oregon, headquarters in June 1995 in his role as consultant and advisor to AEI.

Respondent received monetary compensation for his work on behalf of AEI and accepted travel benefits or reimbursement for travel expenses in connection with this work. AEI paid respondent $50,000 in 1994, $228,968 in 1995, and $152,241 in 1996. In addition, respondent and his spouse received from AEI free clothing and shoes obtained from the Nike company store.

## PROCEDURAL HISTORY

On August 18, 1995, the Commission notified respondent by letter that he had been accused of violating the Code of Judicial Conduct, that an investigation was set to commence, and that he should respond to the Commission with an explanation of the extent and nature of his relationship with Agassi. The Commission's letter stated specifically that in Arizona "a superior court judge may not practice law nor serve as an advisor or employee of any business entity, except in passive or family-related businesses, and cannot engage in financial and business dealings that may be perceived to exploit the judge's position." Respondent answered in writing on August 31, 1995, explaining that Rogers had asked him to assist as a consultant in negotiations for the renewal of Agassi's contract with Nike, that he had discussed the matter with his presiding judge before beginning the consultation, and that "[a]fter perusing the canons of ethics both [the presiding judge] and I concluded that there was nothing improper in such efforts." In addition, he attached memoranda prepared by his and the presiding judge's law clerks discussing this issue. The memoranda, however, dated March 1, 1995, and August 3, 1995, did not address the relevant canons identified by the Commission, i.e., the specific canons prohibiting the practice of law by judges and prohibiting judges from serving as advisors to business entities.

On August 13, 1996, the Commission filed notice that proceedings concerning respondent had been initiated in accordance with Rules 8, 9, and 10 of the Rules of Procedure for the Commission on Judicial Conduct. The Commission held a formal hearing on October 10, 1996.

During the hearing, the Commission questioned respondent regarding the terms of his consulting agreement with AEI. When asked how his compensation would be paid, respondent declined to answer, testifying that the agreement contained a confidentiality clause prohibiting disclosure of its terms. When asked what he reported on his tax returns, he could not recall the exact amount of compensation reported, but estimated that the amount was "in the six figures" and that he

did not think it was "more than a quarter of a million dollars." At the time of the hearing, respondent had presumably reported income solely for the years 1994 and 1995. Accordingly, his estimate may have been an approximation of his $278,968 share of AEI earnings for those two years. Respondent did not volunteer that he had also received an additional $152,241 in 1996 or that he stood to receive substantial payments in future years.

Rogers, who also testified, confirmed that the consulting agreement set forth the terms and conditions of respondent's work for AEI but pointed out that it included a confidentiality clause. When asked if he would waive confidentiality, Rogers agreed to consult with Agassi and inform the Commission as soon as possible whether AEI would offer its waiver.

Because the Commission had not heard from Rogers or respondent, it issued a subpoena on October 16, 1996, six days after the hearing, directing respondent to provide a copy of the consulting agreement to the Commission on or before October 24, 1996. On October 18, Rogers contacted the Commission and agreed to provide a copy of the consulting agreement with those portions excised that related to compensation. On October 21, the Commission received a redacted copy of the agreement with paragraphs 3(a) and 6 totally excised. The Commission concluded that the document as submitted did not comply with the subpoena and so notified respondent's counsel by letter of October 24. On October 28, Rogers advised the Commission that AEI would not waive confidentiality as to the excised portions of the consulting agreement. Respondent then filed a motion to quash the subpoena with this court.

The Commission filed its Findings of Fact, Amended Conclusions of Law, and Recommendations on November 26, 1996. The Commission specifically identified the following mitigating factors: respondent's long service as a judge; his relatively high ratings in the judicial performance review program; evidence that respondent's consulting work did not affect his performance as judge and that he settled approximately the same number of cases as the entire court tried during his period of involvement with the Nike negotiations; that respondent sought advice from a fellow judge about whether his activities might be improper; and the fact that he "completed all, or substantially all, his consulting work on his own time."

In addition, the Commission identified the following aggravating factors: respondent's failure to seek an advisory opinion from the Judicial Ethics Advisory Committee; respondent's failure to ask those he contacted for advice to consider whether his activities violated specific and relevant provisions of the Code that prohibit judges from practicing law or acting as a negotiator for or advisor to a business entity; respondent's actions that permitted others to identify him as a judge while acting as a business or legal advisor; his willingness to participate in protracted negotiations on behalf of a "client"; the probability that the substantial compensation paid to him would, and did, bring the judiciary into disrepute; and respondent's use, although minimal, of court facilities and personnel to carry out his work on behalf of AEI.

Further, the Commission considered as an aggravating factor respondent's decision to enter into a consulting agreement that included a confidentiality provision and that such provision might impair the Commission's ability to accomplish a full investigation of respondent's activities. The Commission's concern was heightened by the fact that the consulting agreement was not signed until after the contract negotiations between AEI and Nike had concluded and after respondent had received substantial compensation from AEI.

Based on the record before it, the Commission concluded that respondent's participation on behalf of AEI in contract negotiations with Nike violated Article 6, Section 28 of the Arizona Constitution and Canons 4G, 4D(3), and 4H(1) of the Arizona Code of Judicial Conduct. This determination resulted in the recommendation, noted above, that respondent be suspended for sixty days without pay and be required to pay attorneys' fees and assessable costs.

On December 12, 1996, respondent filed a petition with this court requesting either

modification or rejection of the recommendations of the Commission. On December 19, the court ordered that respondent be suspended with pay and that the order remain in effect until the court's final decision. The court also scheduled oral argument for January 15, 1997, and expressly indicated that counsel could address at that time the question whether the subpoenaed consulting agreement should be ordered produced in unredacted form.

On January 3, 1997, respondent resigned from his position as Judge of the Pima County Superior Court, effective January 7. In his letter of resignation, respondent affirmed his intention never again to seek judicial office. Because the violations found by the Commission occurred during respondent's tenure in judicial office, the act of resignation did not terminate the case and did not relieve this court of the responsibility to resolve the matter.

Accordingly, the court heard oral argument on January 15, 1997. After consideration, the court denied respondent's motion to quash the subpoena and issued an order that an unredacted copy of the consulting agreement be produced and filed with the office of the clerk not later than January 22, 1997. On January 21, AEI and Agassi filed a motion for protective order in this court seeking to have paragraphs 3(a) and 6 of the consulting agreement between AEI and respondent sealed by the court for review *in camera*. On January 22, respondent filed the unredacted agreement "under seal" with a memorandum, similarly requesting that the document be reviewed *in camera*. Accompanying the agreement was additional documentation disclosing compensation actually received by respondent from AEI in 1994, 1995, and 1996. On January 24, after further consideration, the court denied AEI's motion for protective order and respondent's request for *in camera* review and issued an order directing the clerk to unseal all documentation submitted under seal.

This court was not persuaded then, and we remain unpersuaded now, that the public interest or any other legitimate interest would have been served by retaining these highly relevant documents under court seal.

## CONCLUSIONS OF LAW

This case involves serious questions concerning both respondent's position as an officeholder within the judicial branch of government of the State of Arizona and the public trust vested in him as a judge of the superior court. The case also addresses the integrity of courts and the responsibility of the judiciary to ensure public confidence in the system as a whole.

■ We agree with the Commission's conclusions of law as well as the underlying factual determinations. Respondent violated the Arizona Code of Judicial Conduct by practicing law, by serving as an advisor to a business entity, and by receiving compensation and reimbursement for unauthorized extra-judicial activities. We discuss the Commission's conclusions in order:

1. Respondent's frequent and significant participation on behalf of AEI in contract negotiations with Nike constitutes the practice of law in violation of both Article 6, Section 28 of the Arizona Constitution and Canon 4G of the Arizona Code of Judicial Conduct.

■ "No justice or judge of any court of record shall practice law during his continuance in office...." Ariz. Const. art. 6, § 28. "A judge shall not practice law." Rule 81, Ariz. R. Sup.Ct., Canon 4G. The practice of law consists of "those acts, whether performed in court or in the law office, which lawyers customarily have carried on from day to day through the centuries...." *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 95, 366 P.2d 1, 14 (1961), *modified on other grounds*, 91 Ariz. 293, 371 P.2d 1020 (1962). Those acts include but are not limited to assisting or advising in the preparation of legal documents or writings, advising regarding legal rights or liabilities, and representing another before a court or administrative agency. *Id.* "They also include rendering to another any other advice or services which are and have been customarily given and performed from day to day in the ordinary practice of members of the legal profession, either with or without compensation." *Id.*

■ Respondent admitted that he acted as an AEI representative during contract renewal negotiations with Nike. He served as one of two principal spokespersons for AEI, and he advised AEI regarding negotiation strategies and the substance of the Nike/AEI contract being negotiated. He provided these services to AEI over a period of at least six months and traveled out of state to meet with Nike representatives on at least six occasions. Moreover, according to the terms of his own agreement with AEI, respondent continues to have consulting responsibilities in return for which he is to receive continuous compensation from AEI.

We find that respondent's effort and work for AEI constitute acts that are customarily performed from day to day in the ordinary practice of members of the legal profession. That they also may be performed in part or in whole by non-lawyers from time to time does not exclude them from the practice of law.

We therefore conclude that respondent did engage in the practice of law in violation of both Article 6, Section 28 of the Arizona Constitution and Canon 4G of the Arizona Code of Judicial Conduct. Respondent's arguments to the contrary are entirely without merit.

2. Respondent violated Canon 4D(3) of the Arizona Code of Judicial Conduct by acting as an advisor to AEI during its contract negotiations with Nike because AEI is neither a business enterprise closely held by respondent or his family nor an entity primarily engaged in family investments.

A judge shall not serve as an advisor to a business entity. Rule 81, Ariz. R. Sup.Ct., Canon 4D(3). One limited exception to this rule permits a judge to manage and participate in "(a) a business closely held by the judge or members of the judge's family, or (b) a business entity primarily engaged in investment of the financial resources of the judge or members of the judge's family." *Id.* However, even while acting on behalf of a family member or family entity without compensation, a judge may not serve as an advocate or negotiator in a legal matter. Rule 81, Ariz. R. Sup.Ct., Canon 4G cmt.

Respondent testified that he advised AEI regarding the Nike/AEI contract and that he participated personally in the negotiations. AEI is wholly owned by Agassi and is neither closely held by the judge or members of his family, nor is AEI primarily engaged in the investment of the financial resources of the judge or his family. Accordingly, the family exceptions in Canon 4D(3) are inapplicable. But even if AEI had been a family entity, respondent must still be held in violation because he undertook to represent his "client" (AEI) in negotiations with Nike, a third party. A judge may not do this, even for a member of his own family.

■ We also agree with the Commission that the term "advisor," as used in Canon 4D(3), does not imply that a permanent or long-term relationship with a business entity must exist in order for the prohibition to apply. The canon places no minimum or maximum time restrictions on conduct that constitutes a violation. In this case, however, the fully-disclosed consulting agreement between respondent and AEI appears clearly to establish a long-term relationship. Respondent's argument that his arrangement with AEI was a one-time, short-term relationship is without merit because (a) the unredacted contract contradicts the argument, and (b) the length of the relationship is not determinative.

Accordingly, we conclude that respondent served as an advisor to AEI, a non-family business, in plain violation of Canon 4D(3) of the Arizona Code of Judicial Conduct.

3. Respondent violated Canon 4H(1) of the Arizona Code of Judicial Conduct by accepting compensation and reimbursement for unauthorized extra-judicial activities.

■ "A judge may receive compensation and reimbursement of expenses for the extra-judicial activities permitted by [the Code], *if the source of such payments does not give the appearance of influencing the judge's performance of judicial duties or otherwise give the appearance of impropriety.*" Rule 81, Ariz. R. Sup.Ct., Canon 4H(1) (emphasis added). Because respondent's extra-judicial activities violated Canons 4G and

4D(3), it is axiomatic that to accept compensation for such activities also violates Canon 4H(1).

Respondent has admitted accepting reimbursement from AEI for his consulting expenses, clothing, and shoes, and has disclosed his tax records for 1994 and 1995, showing earnings from AEI to have been $50,000 and $228,968, respectively. He also provided documentation of four quarterly payments received from AEI in 1996, indicating further compensation of $152,241. The fee payment schedule set forth in the now disclosed consulting agreement between AEI and respondent provided for payment of additional monies to respondent amounting to 2.1% of cash compensation received by AEI from Nike up to $100 million and 3.5% of cash compensation in excess of $100 million. Moreover, although the consulting agreement will terminate upon respondent's death, AEI remains obligated to continue these payments after death to his estate as and when they become due.

■ This stream of income flowing directly to respondent and his estate over a period of years as the result of a business contract that he negotiated while holding judicial office creates the appearance that performance of his judicial duties may have been influenced or compromised and further gives the obvious appearance of judicial impropriety. We conclude, therefore, that respondent has violated Canon 4H(1) by receiving compensation and expense reimbursement for extrajudicial activities prohibited by the Code.

## SANCTION

We are charged with responsibility to censure, suspend, or remove from office a judge who violates the judicial canons. Ariz. Const. art. 6.1, §§ 3, 4. Therefore, having established that respondent violated Canons 4G, 4D(3), and 4H(1), and to provide guidance to other judges, we look both to the aggravating and mitigating factors present in the case at bar.

### A. AGGRAVATION

■ First, the Commission correctly found aggravation in the fact that respondent failed to request an advisory opinion from the Judicial Ethics Advisory Committee. Apparently on the assumption that his conduct might violate the Code, respondent at some point took steps to speak to his presiding judge. Respondent also directed his law clerk to research the matter, but the research memorandum failed to identify relevant Canons 4G and 4D(3). Moreover, respondent has no excuse for failing to seek the necessary opinion from the Advisory Committee, and time constraints on the judge's schedule do not justify entry by a judge into a private contractual relationship for legal and advisory services before obtaining an adequate determination as to whether such conduct is ethically permissible.

Second, we have searched the record in light of the disclosures contained in the unredacted agreement and find inadequate evidence on which to base a finding that respondent deliberately misled the Commission at the October 10, 1996, hearing. We do conclude, however, that he was less than forthcoming in disclosing relevant facts. Respondent perhaps hoped that the Commission would overlook those portions of the agreement that he wanted sealed, or simply would not order them produced. His answers to questions relating to compensation received under the agreement with AEI were ambiguous as to whether his estimate was intended to cover the total amount received or was merely the amount received for a particular year. Accordingly, respondent's answers left room for doubt, and that doubt clearly led to the Commission's attempt to obtain the unredacted agreement.

■ Finally, as a further aggravator, we conclude that respondent's effort to maintain the secrecy of a prohibited business arrangement by shielding it under a confidentiality claim was, of itself, improper behavior. The Commentary to Canon 2A is instructive:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. *A judge must expect to be the subject of constant public scrutiny.* A judge must therefore accept restrictions on the judge's conduct that might be viewed as burden-

some by the ordinary citizen and should do so freely and willingly.

Rule 81, Ariz. R. Sup.Ct., Canon 2A cmt. (emphasis added). That a judge must be the subject of constant public scrutiny clearly indicates that to insist on contractual secrecy in these circumstances constitutes added impropriety.

### B.  MITIGATION

■ We note the Commission's findings that respondent provided long and valuable service to the court, that respondent's involvement with AEI may not have affected negatively his performance as a judge, and that respondent completed most of his consulting work "on his own time." Such factors redound to the judge's credit, and we take them into account. Yet we are constrained to state, notwithstanding the mitigating factors, that judges must adhere continuously to the highest standards of performance, including compliance with all professional and ethical standards. Fortunately, the vast majority of judges do so admirably. Acceptable judicial performance by a judge, however, does not excuse or mitigate blatant violations of the Code.

The fact that respondent sought advice from his presiding judge is, of itself, positive, but the further fact that he was aware of and chose to ignore the Judicial Ethics Advisory Committee, the very body authorized to respond to these inquiries, removes any value that may have come from the conversation with the presiding judge and finally discredits respondent in his handling of the matter.

### C.  DISPOSITION

■ Because respondent has officially resigned from office, the question of suspension or removal has been rendered moot. We are reminded of Justice Moeller's observation in a case in which removal was mooted by the judge's pending retirement: "Persuasive, perhaps ultimately compelling, arguments can be made that the appropriate sanction for the type of conduct involved in this case is removal...." *In re Goodfarb,* 179 Ariz. 400, 403, 880 P.2d 620, 623 (1994) (Moeller, V.C.J., specially concurring). Similarly, because of mootness in the instant case, we need not reach the question of removal or suspension, even though a compelling argument for such action can be made. We do conclude, however, that while public censure may not be adequate, it is nevertheless the sanction left to us under the circumstances. *See In re Lehman,* 168 Ariz. 174, 176, 812 P.2d 992, 994 (1991) (court formally and publicly censured respondent who no longer held office although his conduct would have warranted removal or at least significant suspension without pay); *In re Lockwood,* 167 Ariz. 9, 14, 804 P.2d 738, 743 (1990) (censuring not intended to minimize seriousness of misconduct by respondent who was not renominated in primary election).

The court is now benefited by the full record, including the unredacted agreement that the Commission correctly sought to obtain and respondent's compensation records for 1994, 1995, and 1996. The Commission did not have access to paragraph 6 of the consulting agreement, indicating that the relationship between AEI and respondent was of unspecified duration with compensation payable to respondent until death and providing for payments after death to his estate. In addition, paragraph 3(a), also withheld from the Commission, defines respondent's compensation over the term of the consulting agreement and indicates that the total compensation is likely to be substantially greater than the Commission was able to conclude from respondent's testimony.

Accordingly, because respondent has voluntarily resigned from office and has committed never to seek judicial office hereafter, we impose on respondent the sanction of public censure, and we do so in terms as firm and clear as the court can express.

### CONCLUSION

We issue this opinion not only to conclude proceedings against respondent but also to provide guidance to other judges and to avoid future confusion. When a judge acts as a negotiator for or representative of a person or entity and advises that person or entity regarding a contractual relationship, he or she is practicing law in violation of Canon 4G.

**114**

When a judge gives business advice to a person or entity other than one closely held by the judge or members of the judge's family, he or she serves as an advisor in violation of Canon 4D(3), even when the advice is limited to one contract.

When a judge receives compensation or reimbursement for expenses for extra-judicial activities that are prohibited by the Code of Judicial Conduct, he or she has violated Canon 4H(1), regardless of the amount of compensation.

 When a judge is charged with violation of the Code, complete disclosure and cooperation with the Commission will be absolutely required in order to preserve the integrity of the judicial system.

 Further, the business community and citizens in general should be aware that public disclosure is a likely consequence if a judge becomes involved in business activity on their behalf. As holders of the public trust, judges must avoid the appearance of impropriety and thus must not enter secret agreements that may undermine public confidence in the integrity of the judiciary.

 Accordingly, judges must be prepared to make public disclosure of any relationship or financial dealing that may affect their ability to judge fairly. Plainly, a relationship that involves a judge practicing law or advising a business may not be kept confidential. The very fact of confidentiality or secrecy suggests impropriety. When the public interest, which judges are sworn to uphold, is balanced, as here, against a private confidentiality clause in a personal services contract, the public interest must prevail. On this principle, there can be no equivocation.

Respondent is ordered to pay attorneys' fees and all assessable costs expended in connection with this proceeding, including the hearing before the Commission.

MOELLER, J., and THOMAS J. KLEINSCHMIDT, NOEL FIDEL and PHILIP E. TOCI, Judges, Court of Appeals, concur.

NOTE: ZLAKET, FELDMAN and MARTONE, JJ., recused themselves in this matter. Pursuant to Article 6, Section 3, of the Arizona Constitution, THOMAS A. KLEINSCHMIDT, NOEL FIDEL, and PHILIP E. TOCI, Judges, Court of Appeals, Division One, have been appointed to sit in their stead.