17 P.3d 91

**In the Matter of Judge John M. CARPEN-
TER, Justice of the Peace, East Phoenix
#1 Justice Court, Maricopa County,
State of Arizona, Respondent.**

No. JC–00–0002.

Supreme Court of Arizona,
En Banc.

Jan. 18, 2001.

David G. Derickson, P.C. by David G. Derickson and William R. Harrison, Phoenix, Attorneys for John M. Carpenter.

Bruce Meyerson, Senior Disciplinary Counsel, Kathryn L. Petroff, Disciplinary Counsel, Phoenix, Attorneys for the Commission on Judicial Conduct.

## OPINION

McGREGOR, Justice.

¶ 1 The Commission on Judicial Conduct (Commission), acting pursuant to a stipulation filed by Respondent and disciplinary counsel, recommended that Respondent be retired for disability. We have jurisdiction under Arizona Constitution, Article 6.1, Sections 2, 3, and 4, and Rule 11, Rules of Procedure for the Commission on Judicial Conduct.

### I.

¶ 2 John M. Carpenter (Respondent) was elected Justice of the Peace for the East Phoenix Precinct # 1 in November of 1998, and took office on January 1, 1999. Shortly after Respondent took office, his behavior generated complaints about inappropriate conduct, including making off-color remarks and sleeping during court proceedings. In September 1999, a Phoenix newspaper published an article detailing some of the allegations against Respondent. The Respondent addressed those allegations in a November 1999 letter to the Commission. In his letter,

he disclosed that he suffered from narcolepsy and requested that, as an accommodation to this condition, his courtroom be staffed with a bailiff to assist him.

¶ 3 On February 14, 2000, the Commission instituted formal proceedings against Respondent on the basis of multiple complaints. The statement of charges contained fourteen separate counts and alleged violations of Canons 1, 2A, 2B, 3A, 3B, 3C, 4A, and 4J of the Code of Judicial Conduct.

¶ 4 On March 7, 2000, Respondent filed a response to the statement of charges, in which he admitted a significant portion of the allegations in the statement of charges. On May 24, 2000, Respondent and the Commission's disciplinary counsel filed stipulations with the Commission addressing most of the factual averments in the statement of charges, many of which Respondent had admitted in his previous filing. In addition to his earlier admissions, Respondent now stipulated that he had narcolepsy, which caused him to fall asleep during court proceedings, that he did not disclose his history of narcolepsy on an employment application filed in connection with his position as Justice of the Peace, and that he had not used the bailiff provided to him as an accommodation to help him stay awake. Stipulations 5–11, 14. Respondent also stipulated that he had made inappropriate comments and had circulated inappropriate materials, some of which were racist, sexist, or obscene. Stipulations 16, 17, 35, 38. Respondent further stipulated to the truth of other allegations of improper conduct, including ex parte communications, failure to recuse himself and otherwise creating an appearance of bias, inappropriate uses of his judicial position, failure to respect the rights of parties appearing before him, and failure to adequately perform his judicial responsibilities. Stipulation 18 (ex parte communications); Stipulations 21–22, 26–27 (failure to recuse/appearance of bias); Stipulations 19–20, 24–25 (invocations/uses of judicial office); Stipulations 23, 30–31 (treatment of litigants); Stipulations 28–29, 32–34, 36 (performance of judicial duties). Respondent also admitted to having misrepresented facts in prior responses to the Commission. Stipulations 40–42.

¶ 5 The Commission set the matter for hearing on June 1, 2000. On that day, Respondent and the Commission's disciplinary counsel submitted to the Commission a stipulation for disposition, under which he admitted his conduct had violated Canons 1A, 2A, 2B, 3B(1), 3B(2), 3B(4), 3B(5), 3B(7), 3B(8), 3B(9), 3C(1), 3E, and 4J(4), and that his conduct prejudiced the administration of justice by bringing the judicial office into disrepute. Under the terms of the stipulation, the Commission would recommend that Respondent "be retired for a permanent disability that seriously interferes with the performance of [his] duties...." Respondent agreed that he would be placed on suspension without pay, effective June 5, 2000, pending an order of this court. He further agreed to remain suspended with pay if we did not approve the agreed recommendations, pending further Commission proceedings, "unless the Arizona Supreme Court orders removal instead of retirement."

¶ 6 The Commission approved the stipulated disposition and forwarded the matter to this court for review. After we reviewed the record, we ordered Respondent to appear before us to show cause why we should not immediately remove him from office.

## II.

¶ 7 In considering the appropriate discipline to impose for violations of judicial standards of conduct, our goal is "not to punish the individual judge, but to maintain the high standards of the judiciary and the proper administration of justice." *In re Haddad*, 128 Ariz. 490, 492, 627 P.2d 221, 223 (1981). Judicial discipline serves both to protect the public and to balance "the need for an independent judiciary with the necessity for removal of those who do not measure up to the high standards required of a person holding judicial office." *Id.*

¶ 8 The Commission plays a central and essential role in imposing appropriate judicial discipline. The Commission, fulfilling its constitutional mandate, forwards to this court its recommendation as to the disposition to be made in each case of judicial misconduct, and we give serious consideration to the Commission's recommendations. *Id.* at 491, 627 P.2d at 222. At oral argument in this matter, the Commission indicated that its decision to accept the proffered stipulation rested, at least in part, on the Commission's desire to remove Respondent from his position as quickly as possible, and to end the County's obligation to pay Respondent's salary as soon as possible. Because Respondent agreed to be suspended without pay if the Commission recommended that he be retired with a disability, the Commission found in the stipulated agreement a means to accomplish those objectives.

¶ 9 Although we do not lightly deviate from the Commission's recommended discipline, the ultimate responsibility to impose judicial discipline rests with this court. ARIZ. CONST. art. 6.1, § 4. We therefore independently review the record and act as final judge of law and fact. *In re Lockwood*, 167 Ariz. 9, 11, 804 P.2d 738, 740 (1990); *Haddad*, 128 Ariz. at 491, 627 P.2d at 222. Furthermore, while we understand the Commission's desire to obviate the expense incurred in judicial disciplinary proceedings, ultimately we measure any proposed disciplinary action against the goals of judicial discipline: maintaining the high standards of the judiciary and the proper administration of justice, protecting the public from judges who abuse the responsibility entrusted to them, and assuring the public that we will not tolerate misconduct by judges.

¶ 10 On the basis of our independent review, and considering the nature and frequency of the misconduct in which Respondent admittedly engaged, we conclude that the Commission's recommended discipline is unduly lenient and that Respondent must be removed from office.[1] "[A]bsent significant mitigation, suspension or removal is the only proper sanction for repeated and

---

1. Although we do not accept the Commission's recommendation, we need not remand this case for further development of the record. While we might remand for a hearing in a case in which stipulations were part of a bargained-for stipulated disposition, *cf. In re Braun*, 180 Ariz. 240, 242, 883 P.2d 996, 998 (1994), Respondent entered into the stipulations before agreeing to the disposition, rather than in exchange for the stipulated disposition.

serious misconduct," particularly misconduct that occurs during the performance of judicial duties. *In re Peck*, 177 Ariz. 283, 288, 867 P.2d 853, 858 (1994) (citing *In re Lehman*, 168 Ariz. 174, 812 P.2d 992 (1991) and *In re Anderson*, 168 Ariz. 432, 814 P.2d 773 (1991)).

■ ¶ 11 The conduct to which Respondent admitted, including ex parte contacts, failure to recuse himself in the face of a conflict of interest, habitual tardiness, failure to perform judicial duties fairly and promptly, inappropriate courtroom behavior and language, and inappropriate sexual comments, all constitute the kinds of serious misconduct that we previously have held merit censure, suspension, or removal. *See, e.g., In re Goodfarb*, 179 Ariz. 400, 880 P.2d 620 (1994) (suspending judge for remainder of term for using profane and racially derogatory language toward litigants); *In re Lorona*, 178 Ariz. 562, 875 P.2d 795 (1994) (suspending justice of the peace for attempting to influence magistrate handling cases of friend and step-grandson); *In re Peck*, 177 Ariz. 283, 867 P.2d 853 (1994) (removing justice of the peace who failed to recuse himself and engaged in ex parte communications); *In re Gumaer*, 177 Ariz. 280, 867 P.2d 850 (1994) (suspending justice of the peace for, among other things, ex parte communications, inappropriate handling of traffic tickets, and allowing staff to accept gifts); *In re Ackel*, 155 Ariz. 34, 745 P.2d 92 (1987) (censuring justice of the peace for making inappropriately sexual comments to litigants and staff); *In re Haddad*, 128 Ariz. 490, 627 P.2d 221 (1981) (censuring justice of the peace who did favors for friends; put other judges on notice of possibility of removal for comparable actions). A disproportionately light sanction for serious judicial misconduct does not "foster[ ] public confidence in our self-policing system" or "ensure judicial integrity and preserve judicial independence," as judicial discipline must. *Peck*, 177 Ariz. at 287, 867 P.2d at 857. To measure the scope and extent of Respondent's misconduct, we need only note that Respondent's admitted misconduct equals, or exceeds, the collective misconduct of the respondents in all the decisions summarized above. We cannot justify allowing a judge who has committed so much misconduct in so short a period of time to receive discipline short of removal.

■ ¶ 12 In addition to the serious and repeated nature of Respondent's misconduct, several other considerations lead us to conclude that removal constitutes the only appropriate discipline in this situation. First, most of Respondent's misconduct involved not improprieties in his private life, but rather actions undertaken in his official capacity and therefore directly harmful to the judicial system itself. "We must treat official conduct even more strictly than improprieties in a judge's private life because it goes to the very integrity of our judicial system. Thus, absent significant mitigation, suspension or removal is the only proper sanction for repeated and serious misconduct." *Id.* at 288, 867 P.2d at 858.

¶ 13 Second, Respondent has not presented significant mitigating evidence. Although Respondent argues that we should consider his narcolepsy and other possible mental problems as mitigating factors, we previously have noted that recognition of a judge's personal problems does not permit us to ignore our duty to the public. *In re Jett*, 180 Ariz. 103, 106, 882 P.2d 414, 417 (1994) (involving battered woman syndrome and sleep deprivation). In one case involving a city magistrate who argued that his conduct was caused by his alcoholism and depression, we considered his treatment by a psychologist for depression as a mitigating factor, but his failure to participate in rehabilitation as an aggravating factor. *In re Koch*, 181 Ariz. 352, 353, 890 P.2d 1137, 1138 (1995). Here, Respondent's narcolepsy and possible mental illness provide only minimal mitigation given his failure to seek adequate treatment for them, his failure to reveal his medical condition until it was exposed in a newspaper article, and his failure to use the assistance provided by the court to help him remain awake during court proceedings.

¶ 14 Third, the materials Respondent submitted do not establish a causal connection between his narcolepsy or any other illnesses that he has and the misconduct to which he admitted. During the Commission's hearing, Respondent's counsel indicated Respondent's

belief that his narcolepsy caused his inappropriate behavior, but provided no real evidence to support this contention. The psychological reports attached to the stipulations do not suggest, much less establish, a link between Respondent's mental condition and his behavior. Indeed, the reports do not even set out a definitive diagnosis. Even considering the affidavit Respondent filed with this court only two days before oral argument, we cannot find evidence of a causal link between Respondent's admitted behavior and his mental or physical condition. On this record, any disabilities from which Respondent suffers do not mitigate his conduct. *Cf. Koch,* 181 Ariz. at 354, 890 P.2d at 1139 (stating that while city magistrate's actions may have been caused by a condition that is temporary, the harm caused to the public by his conduct is not temporary, and his removal from office is justified).

¶ 15 Finally, Respondent's history does not provide mitigating factors such as prior good service on the bench or engaging only in misconduct that did not affect actual job performance, factors that have influenced our past decisions to reduce the sanction in judicial discipline cases. *Cf. In re Fleischman,* 188 Ariz. 106, 113, 933 P.2d 563, 570 (1997); *Goodfarb,* 179 Ariz. at 403, 880 P.2d at 623; *Gumaer,* 177 Ariz. at 282–83, 867 P.2d at 852–53. On the other hand, the record established several factors that this court has previously recognized as aggravating: the repeated nature of the misconduct, *Lorona,* 178 Ariz. at 569, 875 P.2d at 802; failure to acknowledge wrongdoing and the offering of excuses, *id.;* and providing inaccurate responses to the Commission's investigation, *Fleischman,* 188 Ariz. at 112, 933 P.2d at 569.

¶ 16 In light of the gravity, frequency, and quantity of the misconduct to which Respondent has stipulated, the absence of mitigators and presence of aggravators, and the lack of evidence that Respondent's failure to perform properly his judicial duties resulted from physical or mental disability, we hold that removal is the appropriate sanction.

### III.

¶ 17 For the foregoing reasons, we remove Respondent from his office as Justice of the Peace, effective immediately.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice-Chief Justice, STANLEY G. FELDMAN, Justice, and FREDERICK J. MARTONE, Justice.

