883 P.2d 996

In re The Matter of Judge A. David
BRAUN, Justice of the Peace Maryvale,
Maricopa County, State of Arizona.

No. JC–94–0004.

Supreme Court of Arizona,
En Banc.

Oct. 27, 1994.

Meyer, Hendricks, Victor, Osborn & Male-
don by Bruce E. Meyerson, Sp. Counsel,
Phoenix, for Commission on Judicial Con-
duct.

A. David Braun, pro se.

## OPINION AND ORDER

FELDMAN, Chief Justice.

This is a judicial disciplinary proceeding in
which we consider the recommendations of
the Commission on Judicial Conduct (Com-
mission). We have jurisdiction under Ariz.
Const. art. 6.1, §§ 2, 3, and 4, and Rule 11,
Rules of Procedure for the Commission on
Judicial Conduct.

■ The Commission is a constitutional
public body that investigates, makes findings,
and recommends disposition of judicial disci-
plinary cases. *See* Ariz. Const. art. 6.1; *In
re Haddad*, 128 Ariz. 490, 491–92, 627 P.2d
221, 222–23 (1981). This court then indepen-
dently reviews the record and acts as the
final judge of law and fact. *In re Ackel*, 155
Ariz. 34, 42, 745 P.2d 92, 100 (1987); *Had-
dad*, 128 Ariz. at 491, 627 P.2d at 222.

### FACTS AND PROCEDURAL HISTORY

On September 8, 1994, the Commission
filed a three-count Statement of Charges
against A. David Braun, the elected Justice
of the Peace, Maryvale Precinct, Maricopa
County (Respondent). The Commission al-
leged numerous violations of Canon 3 of the
Arizona Code of Judicial Conduct, Ariz.
R.Sup.Ct. 81 (Code).[1] Specifically, the Com-
mission charged as follows:

---

1. Respondent's violations date back as far as
1989. The Code of Judicial Conduct was revised
effective February 1, 1985 and amended as of
September 1, 1993. Some allegations refer to
the 1985 version of Canon 3 and others to the
1993 version.

## COUNT I

Respondent has been habitually tardy in the conduct of court business. Respondent's lateness is a constant source of inconvenience and injustice to court staff, litigants, and witnesses as evidenced by a series of complaints filed with the Commission in the following pending cases: 93–120; 94–067; 94–068; 94–104 and by statements of court staff to Commission investigators.

Habitually tardy behavior by a judge violates Canon 3A ["The judicial duties of a judge take precedence over all the judge's other activities"] and Canon 3B(8) ["A judge shall dispose of all judicial matters promptly, efficiently and fairly."] of the Code. All complaints relevant to this Count, except Case No. 93–120, are controlled by the Code, effective September 1, 1993. As to Case No. 93–120, Canon 3A(5) of the Code, effective February 1, 1985, controls.

Habitually tardy behavior by a judge also constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution.

## COUNT II

Respondent has repeatedly failed to decide cases in a timely manner, a pattern that began as early as 1989. In case No. 89–010 the Commission concluded that Respondent failed to rule on a case for 16 months. In case No. 90–062 the Commission admonished the Respondent, this time for taking more than a year to set a case for trial. Even after these strong warnings from the Commission, the Respondent failed to institute the proper administrative control to decide CV–91–01085–RA in a timely manner. In 1992, at least two attorneys complained of Respondent's failure to decide cases and rule on motions in a timely manner.

A judge's failure to decide cases or to rule on motions in a timely manner violates Canon 3A(5) ["A Judge should dispose promptly of the business of the court."] and Canon 3B(1) ["A judge to whom administrative responsibilities are assigned should diligently discharge his administrative responsibilities ..."]. Code, effective February 1, 1985.

A judge's failure to decide cases or rule on motions in a timely manner also constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution.

## COUNT III

Respondent has failed to administer competently, fairly and diligently the day-to-day operations of the Justice Court, to the detriment of court staff and litigants, as evidenced by reports and complaints from court staff. Respondent has ignored the needs and interests of witnesses and litigants by his constant lateness and irregular calendar as reflected in complaints 93–120; 94–067; 94–068; 94–104.

Administrative conduct by a judge that hinders the administration of justice violates Canons 3B(4) [a "judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity ..."]; 3B(8); and 3C(1) ["A Judge shall diligently discharge the judge's administrative responsibilities ... and maintain professional competence in judicial administration ..."]. Code, effective September 1, 1993.

Administrative conduct by a judge that hinders the administration of justice also constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution.

At the time it filed its charges against Respondent, the Commission and Respondent agreed on a Stipulation and Consent to Suspension (Stipulation), in which Respondent admitted the charges against him, consented to a thirty-day suspension without pay, and agreed to take certain steps to monitor his performance to ensure future compliance with the Code. Respondent also

agreed that he would not again seek election or accept appointment to any judicial office.

On September 19, 1994, the Commission filed its Findings of Fact, Conclusions of Law and Recommendations (Recommendations), in which it concluded that Respondent's conduct violated Canon 3 of the Code and that his actions constituted conduct prejudicial to the administration of justice that brought his office into disrepute within the meaning of art. 6.1, § 4 of the Arizona Constitution. The Commission recommended that this Court suspend Respondent without pay for thirty days and order him to pay the Commission's costs and attorneys' fees, all pursuant to the terms of the Stipulation.

## SANCTION

■ We do not lightly undertake the difficult task of disciplining lawyers and judges. Our goal is to impose those sanctions necessary to protect the public and foster judicial integrity. *Haddad,* 128 Ariz. at 492, 627 P.2d at 223.

The Court has considered the Statement of Charges, the Stipulation, and the Recommendations and examined Respondent's conduct in light of its harm to the public and its impact on the perceived integrity of the judicial system. We agree with the Commission's findings and conclusions, and must decide whether the recommended sanctions are appropriate. On this question, neither the Recommendations nor the Stipulation binds us because we have the ultimate responsibility to determine the facts, the law, and the appropriate sanction to be imposed. Ariz. Const. art. 6.1, §§ 3 and 4; *In re Peck,* 177 Ariz. 283, 290, 867 P.2d 853, 860 (1994).

■ We believe the procedure followed by the Commission and its special counsel in this case—working with Respondent to reach an agreement acceptable to both sides and entering into a stipulation and consent to sanction—comports with the public interest, given the facts and charges under consideration. We also believe such a procedure will aid the Commission in the prompt, efficient, and cost-effective disposition of many matters. Therefore, we approve the procedure and will recognize it in this case and, if

appropriate, in the future. If we find the procedure inappropriate under a given set of facts, we will remand for a full hearing.

■ In this case, we believe the thirty-day suspension recommended by the Commission and agreed to by Respondent is appropriate for the offenses charged. Unlike Judge Peck, Respondent did not misuse his office. *Cf. Peck,* 177 Ariz. at 288, 867 P.2d at 858. Although Respondent had been warned previously about tardiness and administrative problems, he admitted the Commission's allegations of misconduct and cooperated fully with the investigation. Nevertheless, we believe a suspension is warranted, given Respondent's history, and accept the Commission's recommendation concerning the length of that suspension. We also believe the monitoring program arranged by the Commission is consistent with the goals of judicial discipline. That program will both protect the public by overseeing Respondent's performance and, combined with the suspension, serve to foster public confidence in the judicial system's self-policing responsibility. *See In re Jett,* 180 Ariz. 103, 882 P.2d 414 (1994).

## ORDER

IT IS ORDERED, therefore, that Respondent is suspended from office without pay for a period of thirty days, beginning Monday, November 14, 1994.

IT IS FURTHER ORDERED that when he completes his suspension, Respondent shall comply with the monitoring program agreed to in the Stipulation, including the following steps:

1. Respondent shall fully comply with the daily calendar provided pursuant to the Maryvale Justice Court Administrative Plan (Administrative Plan), attached hereto as Exhibit A and incorporated herein by reference.

2. Respondent agrees to be monitored by a mentor judge who shall be assigned to the Maryvale Justice Court in accordance with the Administrative Plan.

3. Respondent shall maintain a daily log indicating the time he arrives at court and the time he leaves court. This log shall be

submitted monthly to the Commission for the remainder of his term, which expires on January 1, 1997.

IT IS FURTHER ORDERED that, pursuant to the Stipulation, Respondent shall not again seek election or accept appointment to any judicial office in Arizona.

IT IS FURTHER ORDERED that Respondent shall pay the Commission's costs and attorneys' fees resulting from the investigation and resolution of this case. The Commission may claim those costs and fees in the usual manner.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

## EXHIBIT A

### MARYVALE JUSTICE COURT ADMINISTRATIVE PLAN

Justice Court Administration agrees to provide the following steps to aid in the resolution of current administrative problems at the Maryvale Justice Court. These steps recognize that the administrative problems at the Maryvale Justice Court result from Judge Braun's frequent tardiness and administrative difficulties, as well as personality conflicts between the Judge and the staff.

Justice Court Administration specifically agrees:

1. to make necessary staff changes during Respondent's suspension to help mitigate the personality conflicts between the judge and staff at the Maryvale Justice Court;

2. to develop and implement during Respondent's suspension a system whereby Justice Court Administration shall set the daily Maryvale Justice Court Calendar to ensure that Judge Braun discontinues his tardy behavior; and

3. to provide a mentor judge to accompany Judge Braun for at least one month and then at intervals thereafter. This judge shall (1) make suggestions to Respondent Braun to improve the performance of his administrative duties; and (2) make periodic reports to the Commission on Judicial Conduct.

4. to minimize further administrative disruption, by taking all reasonable steps to assign the same pro tem Judge to the Maryvale Justice Court throughout Judge Braun's suspension.

DATED this 7th day of September, 1994.