990 P.2d 642

**In the Matter of J. Michael FLOURNOY, Judge of the Superior Court, Coconino County, State of Arizona.**

No. JC–99–0002.

Supreme Court of Arizona,
En Banc.

Dec. 16, 1999.

Slutes, Sakrison, Grant, Hill and Rubin, By Tom Slutes, Tucson, Gary Stuart, Phoenix, and Edith Croxen, Tucson, Attorneys for J. Michael Flournoy.

Kutak Rock, By Michael Sillyman, Phoenix, Attorney for Commission on Judicial Conduct.

## O P I N I O N.

MARTONE, Justice.

¶ 1 This is a judicial disciplinary proceeding in which J. Michael Flournoy, Judge of the Superior Court of Arizona in Coconino County, asks us to reject the sanction recommended by the Commission on Judicial Conduct under Rule 11, Rules of Procedure for the Commission on Judicial Conduct.

## I. BACKGROUND

¶ 2 The Commission charged Judge Flournoy with five counts of judicial misconduct. Count I alleged that Judge Flournoy engaged in significant and frequent outbursts of temper in the courtroom. Count II alleged that Judge Flournoy reacted violently when the clerk of the superior court approached him about a problem with the numbering system for grand jury returns. Count III alleged that Judge Flournoy frequently engaged in *ex parte* contacts with lawyers about the merits of individual cases. Count IV alleged that Judge Flournoy made inappropriate comments about the physical attributes of female lawyers and court staff. Count V alleged that Judge Flournoy tampered with the official transcript in the case of *Reinen v. Northern Arizona Orthopedics,* CV 95–0280.

¶ 3 The Commission and Judge Flournoy stipulated to return Counts III and IV to the Commission for informal discipline. The Commission accepted the stipulation and reprimanded Judge Flournoy on each count. The stipulation provided that the Commission could consider Counts III and IV in aggravation when determining the appropriate sanction, if any, following the formal hearing on the remaining charges.

¶ 4 The Commission and Judge Flournoy also entered into a stipulation with respect to Counts I and II. It provided that Judge Flournoy would not dispute the existence of a prima facie case on Counts I and II on condition that the sanction recommended on those counts range from no discipline to a six-month suspension. The stipulation also provided that Judge Flournoy waived the right to appeal the Commission's findings and recommended discipline for Counts I and II.[1]

¶ 5 After an evidentiary hearing on Count V, the only remaining charge, the Commission filed its Amended Findings of Fact, Conclusions of Law, and Recommendations. We independently review the Commission's findings because we are the ultimate trier of fact and law. *In re Lockwood,* 167 Ariz. 9, 11, 804 P.2d 738, 740 (1990). We do, however, give serious consideration to the Commission's findings, *In re Haddad,* 128 Ariz. 490, 491, 627 P.2d 221, 222 (1981), particularly when questions of credibility are involved. *In re Lorona,* 178 Ariz. 562, 565, 875 P.2d 795, 798 (1994). In this light, the relevant facts follow.

¶ 6 Judge Flournoy was the trial judge in *State v. Dowtin,* CR 96–0093, and placed Dowtin on probation. Later, Dowtin was

---

1. Judge Flournoy argues that he did not admit any wrongdoing in the stipulation on Counts I and II. He further argues that the agreement is ambiguous. We do not find any ambiguity. But even if there were, Judge Flournoy did not object during the disciplinary hearing when the presiding officer stated that "the stipulation means that Counts 1 and 2 of the Amended Statement of Charges are considered proven" and the hearing would "proceed as to Count 5 only." Tr. Mar. 25, 1999 at 7–8. Judge Flournoy thus waived any issue about the meaning of the stipulation.

called as a potential juror in *Reinen v. Northern Arizona Orthopedics,* CV 95–0280, a civil proceeding before Judge Flournoy. At voir dire, Dowtin asked to be excused because of his involvement in pending litigation. Judge Flournoy adjourned to chambers with Dowtin, the lawyers, the clerk, and the court reporter, Kathryn Anderson.

¶ 7 While in chambers, Judge Flournoy explained that Dowtin was involved in some litigation before him. Judge Flournoy then allowed the lawyers to question Dowtin. After their examination, Judge Flournoy, without objection, excused Dowtin from further service as a juror.

¶ 8 Once Dowtin left chambers, one of the lawyers asked Judge Flournoy to clarify Dowtin's concerns about sitting as a juror. Judge Flournoy explained that Dowtin was on probation for two misdemeanors. Judge Flournoy stated, "He's different....I was so scared of [Dowtin] I would move to the courtroom at night because he's a gunman, I didn't want to get plucked out of the chair....And I came down real hard on him and put him on probation with these conditions." Petitioner's Ex. 10 at 6. Anderson continued to record the proceedings until one of the lawyers asked whether they were "still on the record." *Id.* at 7. Judge Flournoy stated that they were not and Anderson stopped recording.

¶ 9 The preceding facts are undisputed. At this point, however, the testimony differed. Anderson testified that Judge Flournoy approached her after Dowtin's voir dire and stated, "If anyone orders that transcript of Dowtin being in chambers, I want to know about it." Tr. Mar. 25, 1999 at 29. A short time later, Mr. Gustafson, Dowtin's criminal lawyer, ordered a copy of the transcript. Anderson informed Judge Flournoy of Gustafson's request and testified that Judge Flournoy told her, "Okay. What I want you to do is, when [Dowtin] leaves the room, that's the end of the transcript." *Id.* at 30. When Anderson replied, "I don't feel comfortable with that," Judge Flournoy responded, "Just do it." *Id.*

¶ 10 Anderson claimed that she was very upset after this conversation but followed Judge Flournoy's instruction. She sent Gustafson only that portion of the transcript up to the point where Dowtin left Judge Flournoy's chambers. She discussed her discomfort with her fellow staff members and told them that she "was very upset about it because [she] felt like it was an ethical problem for [her] as a court reporter." *Id.* at 32.[2] Anderson also prepared herself a note memorializing Judge Flournoy's instructions. The note read, "Dowtin-ordered me to stop transcript @ Dowtin's leaving chambers when he'd made remarks to attys how weird he was. Dowtin situation misdemeanor? 'Just do it.'" Petitioner's Ex. 25.

¶ 11 Judge Flournoy testified that Anderson's recitation of the facts was incorrect. He denied instructing Anderson to omit any portion of the record. He testified that while they were returning to the courtroom from chambers she asked if they had been on the record after Dowtin had left chambers, to which Judge Flournoy answered, "No." Tr. Mar. 25, 1999 at 110. He claims that Anderson never communicated any ethical concern to him. "[S]he at no time ever asked me anything about what I wanted or not wanted in any transcript....She did her own thing. I never was involved in what was in or not in any transcript." *Id.* at 111–12. Judge Flournoy testified that he asked Anderson about the alleged omission and asserted that Anderson admitted that he "never asked her to delete any portion of the Reinen transcript. And if [he] had asked her to make such a deletion, ... that she would not have done so under any circumstances." *Id.* at 138.

¶ 12 Gustafson had moved to disqualify Judge Flournoy for cause in Dowtin's criminal case and was seeking evidence of Judge Flournoy's bias against Dowtin. Gustafson testified that he never received the portion of the transcript that began after Dowtin left Judge Flournoy's chambers. After learning of the omitted portion of the transcript, Gustafson felt that Judge Flournoy's true feel-

---

2. Linda Star, Judge Flournoy's court clerk, testified that Anderson told her Judge Flournoy instructed Anderson "[i]f this is ever transcribed, don't include comments that I made about Mr. Dowtin." *Id.* at 143.

**444**

ings regarding Dowtin "had been suppressed and hidden." *Id.* at 59. At the disqualification hearing, Gustafson asked Judge Flournoy if he "had paranoid feelings about Mr. Dowtin" to which Judge Flournoy responded, "I don't think of him any different [sic] than any other defendant." Petitioner's Ex. 11 at 28. Gustafson believed that the omitted portion of the transcript could have been useful in impeaching Judge Flournoy at the disqualification hearing. Gustafson stated, "It would have been in bold, upper case print. I would have used it." Tr. Mar. 25, 1999 at 61.

## II.  The Commission's Decision

¶ 13 The Commission had informally disciplined Judge Flournoy six times before this case. Judge Flournoy became a judge in 1992. In 1993, in Case 93–181, the Commission admonished Judge Flournoy for failing to recuse himself. In Case 94–143, the Commission reprimanded Judge Flournoy for making gratuitous and unnecessary comments to the parents of a victim. Later that same year, in Case 94–210, the Commission reprimanded Judge Flournoy for losing his temper with a lawyer. In Case 95–059, the Commission admonished Judge Flournoy for making insensitive remarks to a criminal defendant. The Commission reprimanded Judge Flournoy for making inappropriate comments to a litigant in Case 98–266. Finally, in Case 98–270, the Commission reprimanded Judge Flournoy for inappropriately asking a defense lawyer if his client was guilty and for making inappropriate comments to the defendant.

¶ 14 In recommending a sanction, the Commission considered both aggravating and mitigating circumstances. In aggravation, the Commission found that Judge Flournoy's "regular and well-known outbursts of temper, his frequent abuse of attorneys, his improper treatment of witnesses and staff, his *ex parte* communications in violation of the Code of Judicial Conduct, and his tampering with an official court record, all taken together, demonstrate a pattern of misconduct and a consistent lack of regard for the high position he holds." Amended Findings at 13. In mitigation, the Commission considered Judge Flournoy's "reputation as an efficient, hard-working trial judge who is current in his caseload." *Id.* The Commission also found Judge Flournoy's "reputation in much of the legal community is that he is a truthful person." *Id.*

¶ 15 On Count I, the Commission found that Judge Flournoy's "repeated outbursts of temper, in which he shouted at attorneys and litigants, belittled attorneys in the presence of their clients, and gestured in a threatening manner exceeds [sic] behavior that might normally be tolerated or expected of a judge who regularly handles difficult cases." *Id.* at 14. The Commission concluded that this conduct violated Canons 1A, 2A, 3B(3), and 3B(4) of the Code of Judicial Conduct, Rule 81, Ariz. R. Sup.Ct., and constituted conduct prejudicial to the administration of justice within the meaning of article 6.1, section 4 of the Arizona Constitution.

¶ 16 On Count II, the Commission found that Judge Flournoy's "conduct in shouting and pointing his finger at the elected clerk of the superior court, while standing over her and making derogatory and cruel comments, claiming that she did not know what she was doing and threatening to throw her in jail," violated Canons 1A, 2A, and 3B(4) of the Code. *Id.* The Commission concluded that this conduct was prejudicial to the administration of justice in violation of article 6.1, section 4 of the Arizona Constitution.

¶ 17 On Count V, the Commission found that "Anderson is a credible witness on this issue and [Judge Flournoy] is not." *Id.* at 8. Consequently, it found Judge Flournoy's "instruction to his court reporter to not transcribe a portion of the jury selection proceedings in chambers constituted tampering with official court proceedings" in violation of Canons 1A and 2A of the Code. *Id.* at 15. The Commission concluded that this conduct constituted willful misconduct in office in violation of article 6.1, section 4 of the Arizona Constitution.

¶ 18 Finally, the Commission found that Judge Flournoy's repeated failure to respond to informal discipline was irresponsible and improper in violation of Canon 2A of the Code, and prejudicial to the administration of justice in violation of article 6.1, section 4 of the Arizona Constitution.

¶ 19 The Commission recommended that we suspend Judge Flournoy for his conduct on Counts I and II for a period of at least six months. With respect to his conduct on Count V, the Commission recommended that we suspend Judge Flournoy for an additional period of at least twelve months, consecutive to his suspension for Counts I and II. The Commission also recommended that reinstatement be conditioned on his successful completion of counseling and education, and upon demonstration to the Commission, after an evidentiary hearing, that he would comply with the Code of Judicial Conduct. Four members of the Commission dissented. They recommended removal. They also doubted whether our rules allow reinstatement to be conditioned on an evidentiary showing to the Commission.

¶ 20 The Commission filed its Amended Findings on June 23, 1999. Article 6.1, section 2 of the Arizona Constitution provides that a judge is disqualified from acting as a judge, without loss of salary, while a recommendation of suspension is pending before this court. We therefore suspended Judge Flournoy on June 24, 1999, pending our final decision. *See* Rule 11(d), Rules of Procedure for the Commission on Judicial Conduct ("interim suspension required by article 6.1, section 2").

## III. RESOLUTION

■ ¶ 21 Judge Flournoy first argues that the Commission's limited discovery procedures violated his due process rights. But the Commission's discovery procedures complied with the Rules of Procedure for the Commission on Judicial Conduct. More importantly, Judge Flournoy fails to demonstrate how the Commission's discovery procedures prejudiced him in any way. We thus find that the Commission's discovery procedures did not deny Judge Flournoy due process.

■ ¶ 22 Judge Flournoy next argues that the Commission's combined investigatory and adjudicatory functions denied him due process under the circumstances of this case. In *Matter of Ackel*, we concluded that "a combination of investigative and judicial functions within an agency does not violate due process." 155 Ariz. 34, 38, 745 P.2d 92, 96 (1987), *overruled on other grounds by In re Jett*, 180 Ariz. 103, 882 P.2d 414 (1994). We said that, "[a]n agency which has only the power to recommend penalties is not required to establish an independent investigatory and adjudicatory staff." *Id.* at 38–39, 745 P.2d at 96–97.

■ ¶ 23 Judge Flournoy distinguishes *Matter of Ackel* by focusing on the manner in which the Commission conducted its investigation in this case. He argues that the Commission invaded his privacy by conducting an unnecessarily broad investigation. Although Judge Flournoy alleges damage to his credibility and general reputation, he fails to show how the invasion to his privacy affected this case or prejudiced the proceedings on the specific charges against him.

■ ¶ 24 Judge Flournoy further argues that *Matter of Ackel* does not apply here because the Commission flagrantly disregarded its obligation to separate its investigatory function from its adjudicatory function. Yet he fails to show the relevance of this to his case. Again, he shows no prejudice.

¶ 25 Judge Flournoy next argues that the Commission failed to prove Count V by clear and convincing evidence. At the hearing, the Commission called five witnesses, including Judge Flournoy and Anderson. The Commission found that Anderson was a credible witness and Judge Flournoy was not. We give deference to this finding because the Commission heard and saw the witnesses and we did not. Anderson's note corroborated her testimony. Linda Star confirmed Anderson's testimony. Finally, the undisputed facts support her testimony. The portion of the hearing not transcribed for Gustafson was inconsistent with Judge Flournoy's testimony at the disqualification hearing. At the disqualification hearing, Judge Flournoy understated his feelings and said that he did not have any unusual fear of Dowtin. Yet, he had admitted earlier that he moved into a windowless courtroom at night to avoid the threat of being shot through his office window. Even if that part of the voir dire was supposed to have been off the record, it was

**446**

recorded. Once recorded, and relevant to another legal proceeding, there was no justification for withholding it. We agree with the Commission that Count V was proven by clear and convincing evidence.

¶ 26 Finally, Judge Flournoy argues that the Commission's recommended sanction is excessive and violates the doctrine of proportionality. But Judge Flournoy had a total of six prior disciplinary cases on his record which began a mere year after he joined the bench. He was given several opportunities to change his behavior but did not do so. In addition, Counts I, II, III, and IV were aggravating factors. The Commission's recommended term of suspension is within the range of reason. We thus adopt it. We do not, however, adopt the Commission's recommendation with respect to conditional reinstatement. We agree with the dissenting commission members that our rules do not empower the Commission to hear a request for reinstatement. Upon the expiration of the term of suspension, a suspended judge resumes the duties of the office without further order of this court.

### IV. Conclusion

¶ 27 Under the authority of article 6.1, section 4 of the Arizona Constitution, Judge Flournoy is suspended without pay to and including December 24, 2000, effective upon the filing of this opinion.[3] Judge Flournoy is also assessed costs and reasonable fees actually incurred as may be taxed and allowed.

CONCURRING: STANLEY G. FELDMAN, Justice, RUTH V. McGREGOR, Justice, RUDOLPH J. GERBER, Judge and MICHAEL D. RYAN, Judge.

Chief Justice THOMAS A. ZLAKET and Vice Chief Justice CHARLES E. JONES recused themselves and did not participate in the determination of this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Judge RUDOLPH J. GERBER and

---

3. Making the suspension without pay effective on the filing of this opinion, rather than retroactively, is consistent with *In re Goodfarb*, 179 Ariz. 400, 403, 880 P.2d 620, 623 (1994). Retroactive

Judge MICHAEL D. RYAN of the Court of Appeals, Division One, were designated to sit in their stead.

suspensions are more appropriate in cases involving illegal conduct. *See Matter of Marquardt,* 161 Ariz. 206, 216–17, 778 P.2d 241, 251–52 (1989).