SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of | ) Arizona Supreme Court |
| | ) No. JC-03-0002 |
| | ) |
| HON. MICHAEL C. NELSON, | ) Commission on Judicial |
| | ) Conduct No. 02-0307 |
| Respondent. | ) |
| | ) **O P I N I O N** |
| | ) |
| | ) |
| _____ | ) |

Review from the Arizona Commission on Judicial Conduct
No.02-307

**REMANDED**

_____

Commission on Judicial Conduct                              Phoenix
    by:  Gerald A. Williams, Disciplinary Counsel
Attorney for Arizona Commission on Judicial Conduct

Thomas A. Zlaket                                              Tucson
Attorney for Michael C. Nelson

_____

**R Y A N**, Justice

¶1      The Commission on Judicial Conduct brought formal charges against Respondent, Judge Michael C. Nelson, for judicial misconduct while serving as a superior court judge in Apache County.  After a formal hearing, the Commission found that Respondent violated several Canons of the Code of Judicial Conduct.  The Commission filed its findings and recommendations with this court recommending that Respondent be removed from office and that he be ordered to pay the costs and fees associated with the disciplinary proceeding.

**¶2** Electing not to file a petition to modify or reject the Commission's recommendations, Respondent resigned from office, but reserved the right to contest individual items of costs and fees that might be assessed against him. The Commission subsequently filed its Statement of Costs, which included investigative costs as well as the costs of lodging the Commission members during the hearing. Respondent did not contest the assessment.

**¶3** All recommendations in excess of censure "are subject to review by the supreme court, either by petition or on the court's own motion." R. Comm'n Judicial Conduct 29(a). We exercised sua sponte review solely to decide whether the Rules of the Commission on Judicial Conduct allow costs in addition to those permitted by Arizona Revised Statutes ("A.R.S.") section 12-332 (2003).[1] We have jurisdiction under Article 6.1, Section 5, of the Arizona Constitution and Rule 29(d) of the Rules of the Commission on Judicial Conduct.

---

[1] Because Respondent resigned, the only sanction left to us is censure. *See In re Fleischman*, 188 Ariz. 106, 113, 933 P.2d 563, 570 (1997) (citing *In re Lehman*, 168 Ariz. 174, 176, 812 P.2d 992, 994 (1991)). In *Fleischman*, although the judge had resigned, we nevertheless issued an opinion in part "to provide guidance to other judges and to avoid future confusion." *Id*. However, given the nature of Respondent's misconduct, we find such an exercise to be unnecessary.

¶4     Article 6.1 of the Arizona Constitution created the Commission on Judicial Conduct, which has the power to recommend censure, retirement, suspension, or removal of a judge.  Ariz. Const. art. 6.1, §§ 3, 4.  Section 5 of Article 6.1 states that this court has the power to "make rules implementing [Article 6.1]."  In accordance with that power, we approved and adopted the Rules of the Commission on Judicial Conduct.  Under Rule 18(e), when the Commission recommends formal sanctions, it also "may recommend the imposition of other measures consistent with these rules, including, but not limited to, the assessment of attorney fees and costs."

¶5     The Commission recommended that we assess costs in the amount of $5494.65.  The Commission's recommendation included investigative costs, which itemized mileage, lodging, and per diem for the Executive Director and Disciplinary Counsel to interview witnesses.  The Commission also recommended that Respondent pay hearing costs, which included mileage reimbursement for witnesses; mileage, lodging, and per diem for the hearing panel members to travel to the hearing; and court reporting transcription costs, including the deposition of a witness and the hearing transcript.

¶6     Neither Rule 18(e), nor any other provision of the rules governing the Commission, defines the term "costs."  Thus,

the issue before us is whether the term "costs" as used in Rule 18(e) encompasses all the items requested by the Commission.

## II.

### A.

¶7     Relying on *Harris v. Smartt*, 68 P.3d 889 (Mont. 2003), Respondent initially argues that this court lacks the authority to assess any costs against him.  *Harris* held that the imposition of costs or attorney's fees in judicial disciplinary proceedings violated the Montana Constitution.  *Id*. at 892-93. The court concluded that the list of sanctions found in Montana's constitution — retirement, censure, suspension, or removal — were exclusive, and the Judicial Standards Commission therefore could not adopt a rule that permitted the assessment of costs in a judicial disciplinary proceeding.  *Id*. at 891.

¶8     Respondent argues that because Article 6.1, Sections 3[2]

---

[2]         On recommendation of the commission on judicial conduct, or on its own motion, the supreme court may suspend a judge from office without salary when, in the United States, he pleads guilty or no contest or is found guilty of a crime punishable as a felony under Arizona or federal law or of any other crime that involves moral turpitude under such law. If his conviction is reversed the suspension terminates, and he shall be paid his salary for the period of suspension. If he is suspended and his conviction becomes final the supreme court shall remove him from office.

Ariz. Const. art. 6.1, § 3.

and 4[3] of the Arizona Constitution similarly enumerate the possible sanctions that this court may impose, we are limited to imposing only the listed sanctions — censure, suspension, retirement, or removal.  For the following reasons, we disagree that our constitution precludes an assessment of costs in a judicial disciplinary proceeding.

¶9     First, our constitution expressly gives this court the power to promulgate rules "implementing [Article 6.1]."  Ariz. Const. art. 6.1, § 5.  Montana's constitution does not have a comparable provision.  *See* Mont. Const. art VII, § 11.  We thus find *Smartt* distinguishable.

¶10    Second, Respondent's narrow reading of Article 6.1 would mean that this court could impose only the sanctions of retirement, censure, suspension, or removal.  We do not read Article 6.1 so narrowly.  Several other state supreme courts, in

---

[3]     On recommendation of the commission on judicial conduct, the supreme court may retire a judge for disability that seriously interferes with the performance of his duties and is or is likely to become permanent, and may censure, suspend without pay or remove a judge for action by him that constitutes wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Ariz. Const. art. 6.1, § 4(A).

addressing this issue, have rejected such a limited view of their disciplinary power. For example, the Supreme Court of Kentucky held that "the express grant of authority to retire, suspend or remove judges for good cause contained in Section 121 of the Kentucky Constitution includes by implication the authority to impose the lesser sanctions set forth in [the Rules]." *Nicholson v. Judicial Ret. and Removal Comm'n*, 562 S.W.2d 306, 310 (Ky. 1978). North Dakota's supreme court also concluded that its statutory provision, which listed only censure or removal as possible sanctions, "impliedly also includes any appropriate action in between," including the assessment of costs. *In re Cieminski*, 270 N.W.2d 321, 334 (N.D. 1978); *see also In re Anderson*, 252 N.W.2d 592, 595 (Minn. 1977) (holding "that the grant of absolute power to remove from office implicitly gives us the power to impose lesser sanctions short of removal, in the absence of specific indication to the contrary"). We likewise conclude that if we have the power to remove a judge, we also have the power to impose lesser sanctions, including an assessment of costs and attorney's fees. *See also* R. Comm'n Judicial Conduct 16 (permitting the Commission to issue advisory letters or direct diversion "to assist a judge in improving or modifying behaviors or procedures"); *id*. R. 17 (providing for informal sanctions such as an admonition, reprimand, or other appropriate measures).

¶11    Third, the disciplinary process is procedural, not substantive. *See In re Shannon*, 179 Ariz. 52, 77, 876 P.2d 548, 573 (1994) (concluding that the attorney discipline process is procedural). Because this court has the exclusive power to regulate the practice of law, which includes disciplining attorneys, *see In re Creasy*, 198 Ariz. 539, 541, ¶ 6, 12 P.3d 214, 216 (2000), we have held that this court has the power to assess costs in attorney disciplinary proceedings. *Shannon*, 179 Ariz. at 78-80, 876 P.2d at 574-76.

¶12    Likewise, Section 5 of Article 6.1 authorizes us to make procedural rules for judicial disciplinary proceedings. As such, Rule 18(e) appropriately permits the Commission to recommend, and for us to impose, an assessment of costs in judicial disciplinary proceedings. *See Cieminski*, 270 N.W.2d at 334. Therefore, we reject Respondent's argument that the constitution does not permit an assessment of any costs in a judicial disciplinary proceeding.

**B.**

¶13    The Commission, on the other hand, argues not only that this court has authority to assess costs, but that such authority is unlimited. It therefore urges that *all* costs should be assessed against Respondent. Relying on *Cieminski*, the Commission contends that the assessment of costs in a judicial disciplinary proceeding is fundamentally different from

awarding costs in a civil case. *Cieminski* states that because "[d]isciplinary proceedings are neither civil nor criminal, . . . the rules pertaining to either do not necessarily apply." 270 N.W.2d at 334. The Commission maintains that we are not limited by civil costs statutes, such as A.R.S. § 12-332, because those statutes apply only to civil actions and not to the imposition of sanctions in a judicial disciplinary proceeding. We agree that judicial disciplinary proceedings are neither civil nor criminal; rather they are sui generis. *In re Marquardt*, 161 Ariz. 206, 214, 778 P.2d 241, 249 (1989) (citing *In re Haddad*, 128 Ariz. 490, 492, 627 P.2d 221, 223 (1981)). But that does not end the inquiry.

¶14 The *Cieminski* court, in recognizing the difference between assessing costs in a judicial disciplinary proceeding and awarding costs in a civil proceeding, explained that "[t]he funds collected pursuant to the [judicial disciplinary] assessment inure to the benefit of the state and not to a party or parties in the proceedings." 270 N.W.2d at 334 (citation omitted). The court reasoned that the "assessment of costs is a part of the disciplinary action and is not the same as awarding costs to either party [in a civil action]." *Id*. at 334-35. The court also concluded that with the power to assess costs comes the power to set limits upon such an assessment. *Id*. at 335. Consequently, albeit without any explanation or reasoning, the

- 8 -

court limited the costs in that particular case to $5000.  *Id*.

¶15    Like the court in *Cieminski*, we conclude that if we have the power to assess costs, we likewise have the power to limit them.  But the Commission argues it is unnecessary for us to set limits on the type of costs that can be assessed because "any judge would be able to file objections concerning the reasonableness of the proposed costs and whether any undue hardship would result from their imposition."  Although this argument has some appeal, we believe the type of costs that may be assessed should be known beforehand so a judge can reasonably anticipate what the cost of a defense to the Commission's charges may involve.  Moreover, "the goal of judicial discipline is not to punish the judge but to protect the public and the judiciary's integrity."  *Marquardt*, 161 Ariz. at 214, 778 P.2d at 249 (citing *Haddad*, 128 Ariz. at 492, 627 P.2d at 223).  An interpretation of Rule 18(e) that permits the potential imposition of all costs incurred by the Commission could be more punitive than protective of the public and the judiciary's integrity.  Accordingly, we conclude that there should be limits on what costs may be assessed under Rule 18(e).  The bounds of those limits must be determined by reference to the language of the Rule itself.  We therefore turn to the interpretation of Rule 18(e).

**¶16**      In interpreting rules, we apply the same principles used in construing statutes. *See State ex rel. Romley v. Martin*, 205 Ariz. 279, 281, ¶ 6, 69 P.3d 1000, 1002 (2003). The term "costs" is not defined by Rule 18, thus we must apply its "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (citing *Kilpatrick v. Superior Court*, 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970)).

**¶17**      Courts have recognized that the word "costs" is a term of art, which must be given a limited meaning. *See, e.g., Van Winkle v. Nash*, 761 N.E.2d 856, 861 (Ind. Ct. App. 2002) ("The term 'costs' is an accepted legal term of art that has been strictly interpreted to include only filing fees and statutory witness fees." (quoting *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 800 (Ind. Ct. App. 1986))). Our court of appeals has also noted that the word "costs" is a term of art. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 197 Ariz. 411, 413 n.3, ¶ 7, 4 P.3d 466, 468 n.3 (App. 2000) ("It is well recognized that 'costs' and 'expenses' are not the same, and that 'costs' is a term of art referring only to recoverable expenses."), *vacated on other grounds*, 201 Ariz. 391, 36 P.3d 739 (2001).

¶18     Generally, "the term 'costs' refers specifically to those items of expense incurred in litigation that a prevailing party is allowed by rule to tax against the losing party." 20 Am. Jur. 2d *Costs* § 1 (1995). And "[b]ecause 'costs' are limited to necessary expenses, they may not include everything that a party spends to achieve victory." *Id*. Thus, we think the costs that may be assessed under Rule 18(e) should be limited to those commonly considered to be recoverable expenses.

¶19     To decide what may be recoverable expenses in a judicial disciplinary proceeding, we turn to the civil cost statutes, such as A.R.S. § 12-332, for guidance.[4] We acknowledge

---

[4]     In *Shannon*, we rejected the argument that the power to assess costs in attorney disciplinary proceedings was limited to the costs that may be taxed in civil actions. 179 Ariz. at 74-78, 876 P.2d at 570-74. On this point, we distinguish *Shannon* from the present case because *Shannon* was an attorney discipline case and this is a judicial conduct proceeding. The State Bar and the Commission are distinct bodies, which serve distinct purposes. For example, the State Bar is an arm of this court, while the Commission is a separate entity specifically created by Article 6.1 of the Arizona Constitution. As such, the State Bar receives no appropriation from the legislature. Consequently, the funding of disciplinary proceedings must come from the members of the bar and those who are disciplined. *See Shannon*, 179 Ariz. at 79, 876 P.2d at 575. For this reason, we concluded that it is appropriate to shift the financial burden of disciplinary proceedings to those who are responsible for the costs, thus ensuring "the ability of the State Bar to continue its efforts in this area without having to ask the State Bar's members to further subsidize the Bar's disciplinary efforts." *Id*. This conclusion is critical because attorney discipline is only one of many functions of the State Bar. On the other hand, the Commission on Judicial Conduct operates exclusively to regulate judicial conduct. As a separate entity, the Commission has its own budget, which it uses almost entirely to regulate

- 11 -

that the plain language of the civil costs statutes limits their application to civil proceedings. And as discussed above, judicial conduct proceedings are neither civil nor criminal proceedings. *Marquardt*, 161 Ariz. at 214, 778 P.2d at 249; *Cieminski*, 270 N.W.2d at 332. But because the term "costs" is a term of art having a limited meaning, we find the civil costs statutes, which define that term, useful guides in determining what costs may be assessed under Rule 18(e).

## IV.

¶20    The costs that may be imposed in superior court for civil actions are limited to taxable costs and jury fees. A.R.S. § 12-332. This statute states in part the following:

> A.   Costs in the superior court include:
>    1.   Fees of officers and witnesses.
>    2.   Cost of taking depositions.
>    3.   Compensation of referees.
>    4.   Cost of certified copies of papers or records.
>    5.   Sums paid a surety company for executing any bond or other obligation therein . . . .
>
>    . . . .
>
> B.   A jury fee shall also be included in the judgment and taxed as costs and shall be fixed by the court at the time the judgment is given. The jury fee shall include the cost of reimbursement for juror travel expenses.

A.R.S. § 12-332(A)(1)-(5), (B). Using A.R.S. § 12-332 as a

---

judicial conduct. We therefore find *Shannon*'s holding inapplicable on this score.

- 12 -

guide, we now turn to the Commission's recommendations.

## A.

**¶21** We first address the investigative costs. The Commission recommended an assessment of costs for the Executive Director and Disciplinary Counsel to travel to Springerville, Eager, and Show Low to interview witnesses. These costs include such things as mileage, lodging, and per diem. Such investigative costs would not be recoverable in a civil case under A.R.S. § 12-332(A). Similarly, the Commission's investigative expenditures are not recoverable expenses here.

**¶22** The Commission urges us to rely on *In re Braun*, 180 Ariz. 240, 883 P.2d 996 (1994), for the proposition that we should award investigative costs. In *Braun*, we ordered that "[r]espondent shall pay the Commission's costs and attorneys' fees resulting from the investigation and resolution of this case." *Id*. at 243, 883 P.2d at 999. Citing this language, the Commission contends that an award of investigative costs is permissible. In *Braun*, however, we did not specify what the awarded costs entailed nor did we explain how costs should be defined for the purposes of Rule 18(e). In addition, *Braun* involved the award of *both* costs and attorneys' fees, which encompassed more than an award of costs alone. Because the term "costs" has a limited scope, we decline to read the brief statement in *Braun* as authority for the proposition that the

- 13 -

term "costs" includes investigative expenses. We therefore reject the Commission's recommendation to assess the investigative costs against Respondent.

**B.**

¶23     We now turn to the Commission's recommendation that hearing costs be assessed against Respondent. First, the Commission requests mileage reimbursement for six witnesses in the amount of $774.87. One of those witnesses, Harold Goings, was not permitted to testify at the hearing. Witness fees are included as costs under A.R.S. § 12-332 but are limited by A.R.S. § 12-303 (2003). Section 12-303 provides that material witnesses "shall also be paid mileage at the rate of twenty cents for each mile actually and necessarily traveled from his place of residence in the [s]tate of Arizona to the place of trial, to be computed one way only." The Commission did not specify how the mileage was calculated for each witness. We find that A.R.S. § 12-303 is a useful guide in calculating mileage reimbursement for witnesses appearing at a judicial disciplinary hearing and conclude that the Commission must calculate mileage fees accordingly. But A.R.S. § 12-303 compensates only for fees paid to "material witnesses." Because Goings did not testify, we cannot say that he was a material witness. Therefore, in its calculation of witness fees, the Commission should not assess Goings' travel expenses against

- 14 -

Respondent.

¶24     Second, the Commission recommends that we assess costs against Respondent for the mileage, lodging, and per diem for the hearing panel members to travel to and conduct the disciplinary hearing.  Respondent argues that A.R.S. § 12-332(B) applies only to jury fees in superior court and a judicial disciplinary panel is not acting as a jury.  We agree with Respondent.  A disciplinary hearing panel's function is similar to that of a judge conducting a bench trial.  We therefore conclude that the travel and lodging costs of the hearing panel members are not assessable costs.

¶25     Third, the Commission recommends that we assess transcription costs for the deposition of Doug Brown.  Deposition costs are specifically included in A.R.S. § 12-332.  In addition, as noted in *Schritter*, this court has held "that the costs of depositions include fees for the court reporter and transcripts, reasonable travel expenses for attorneys and court reporters attending the deposition, and costs of copies of deposition transcripts."  201 Ariz. at 392, ¶ 9, 36 P.3d at 740 (citing cases).

¶26     Nonetheless, Respondent argues that because Brown's deposition was not admitted into evidence at the hearing — the panel found the testimony irrelevant — he should not have to pay for the deposition.  "In Arizona the cost of taking a deposition

is a taxable cost if it was taken in good faith, even though the deposition is not used." *State ex rel. Corbin v. Ariz. Corp. Comm'n*, 143 Ariz. 219, 229, 693 P.2d 362, 372 (App. 1984) (citations omitted). The Commission deposed Brown to preserve his testimony for the hearing because Brown was going to be on vacation and unable to attend the hearing. Accordingly, the deposition was taken in good faith and the Commission's recommendation that Respondent pay the costs for Brown's deposition is appropriate.

¶27 Finally, the Commission recommends that we assess costs for the hearing transcript. Respondent argues that the cost of the court reporter at the hearing should not be assessed against him because it is not a taxable cost under A.R.S. § 12-332. Rather, according to Respondent, it is an expense associated with preserving the record. Because preserving the record is the responsibility of the forum, Respondent maintains that requiring him to pay the court reporting costs is tantamount to compensation of required personnel. Respondent also contends that because he did not seek review of the Commission's findings, the need for a transcript is not "readily apparent," thus the cost of the transcript should not be assessed against him. [5]

---

[5] In an appeal of a civil case, costs may be assessed against an appellant if the appellant does the same as or worse than he

- 16 -

¶28     Respondent is correct that A.R.S. § 12-332 does not list the expense of hearing transcripts as a taxable cost. But a unique circumstance arises in judicial discipline cases. As discussed previously, the Commission only has the power to make recommendations to this court. After the Commission makes its recommendations, we ultimately decide if the recommendations are appropriate. Ariz. Const. art. 6.1, § 4; R. Comm'n Judicial Conduct 29; *In re Flournoy*, 195 Ariz. 441, 442, ¶ 5, 990 P.2d 642, 643 (1999). Accordingly, Rule 27(d)(9) of the Rules of the Commission on Judicial Conduct requires that "[t]he hearing shall be transcribed by a court reporter or tape recorded for use by the supreme court, and a transcript shall be filed with the commission's recommendations." Therefore, although Respondent did not file a petition to modify or reject the Commission's recommendation, the transcript is still an essential element of a judicial disciplinary proceeding regardless of whether the respondent files a petition with this court or whether we exercise sua sponte review. Consequently, the Commission properly recommended that the costs of the hearing transcript be assessed against Respondent.

---

or she did at trial. A.R.S. § 12-342 (2003). Assessable costs include the costs of hearing transcripts. A.R.S. § 12-331 (2003). We do not find these provisions helpful in our analysis on this point because disciplinary proceedings are unusual in that review by this court is mandatory.

**V.**

¶**29** We remand this matter to the Commission to calculate a new statement of costs consistent with this opinion.

_____
Michael D. Ryan, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Rebecca White Berch, Justice

_____
Andrew D. Hurwitz, Justice